722 A.2d 1037

**NORTH HILLS NEWS RECORD and Robyn Tomlin, Appellees,**

v.

**TOWN OF McCANDLESS and Allegheny County, Appellants.**

Supreme Court of Pennsylvania.

Argued Sept. 16, 1998.

Decided Jan. 22, 1999.

Michael W. Streily, James R. Gilmore, Pittsburgh, for the Com.

J. Howard Womsley, Robert Alton Wilson, Pittsburgh, for McCandless.

Susan A. Yohe, Pittsburgh, for North Hills News and Tomlin.

John A. Feichtel, Harrisburg, for Amicus, Pa. Newspaper Publishers

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

SAYLOR, Justice.

This Court invoked its extraordinary jurisdiction to determine whether an audio tape recording of a telephone call made to an emergency response center must be made available to citizens asserting a right to disclosure pursuant to the Pennsylvania Right to Know Act.

On January 1, 1998, Michele Walker Keitel and Charles Dunkle were shot and killed in Ohio Township, Allegheny County. A caller reported the shooting by telephone to the Town of McCandless Central Emergency Telephone Center (the "Center"). The Center was operated by the Town of McCandless ("McCandless") through its police department and provided twenty-four-hour emergency telephone response services to residents of McCandless, Ohio Township and another neighboring municipality. All calls to the Center's emergency number were recorded on a magnetic audio tape.

Upon receipt of this telephone call, the Center notified Ohio Township's police department, which, in turn, dispatched a patrol car, followed by emergency personnel and equipment. Ultimately, Michele Walker Keitel's estranged husband, William Keitel, was arrested in connection with the killings.

Appellees Robyn Tomlin and North Hills News Record submitted requests to McCandless Township's police chief and solicitor, and later to the Allegheny County District Attorney, seeking access to the audio tape recordings of all calls made to the Center on January 1, 1998, relating to the killings. All such requests were denied.

Appellees then filed a statutory appeal in the Court of Common Pleas of Allegheny County pursuant to Section 4 of the Right to Know Act,[1] 65 P.S. §66.4, in which the Commonwealth sought and was granted leave to intervene. After argument, the trial court determined that the tapes were public records pursuant to the Act and should thus be made available to Appellees. In its opinion, the trial court initially acknowledged that the plain language of the Act would not appear to require disclosure of the tapes. Nevertheless, based upon a line of decisions from the Commonwealth Court, it found that the tapes did indeed qualify as public records. The trial court reasoned that:

> [the coverage of the Act] is construed so broadly that it requires only that a record reflect some form of action by an agency that has an effect on someone. Here, the [audio tapes] formed the basis for the municipality's decision to investigate the conduct of certain individuals with regard to their personal rights, privileges, duties and obligations.

(citations omitted). Both the Commonwealth and McCandless lodged notices of appeal in the Commonwealth Court, and the Commonwealth filed an emergency petition in this Court seeking the exercise of extraordinary jurisdiction pursuant to Section 726 of the Judicial Code, 42 Pa.C.S. §726, and Pennsylvania Rule of Appellate Procedure 3309.

In the Act, the General Assembly codified and clarified the common law right of public access to public records. *See Community College of Philadelphia v. Brown*, 544 Pa. 31, 33, 674 A.2d 670, 671 (1996)(citing *Wiley v. Woods*, 393 Pa. 341, 350, 141 A.2d 844, 849 (1958)). Section 2 of the Act provides generally that "[e]very public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." 65 P.S. §66.2. Subject to enumerated exceptions, Section 1(2) of the Act provides that "public records" consist of the following two categories: 1) "[a]ny account, voucher or contract dealing with

---

1. Act of June 21, 1957, P.L. 390, as amended, 65 P.S. §§66.1–66.4 (the "Act").

the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property," 65 P.S. §66.1(2); and 2) "any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons." *Id.*

The first of these categories deals generally with fiscal aspects of governance, providing for public review of accounts, vouchers or contracts "dealing with" receipts of and disbursements by an agency. This Court's recent decision in *Sapp Roofing Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union 12,* 552 Pa. 105, 713 A.2d 627 (1998), concerned this accounts/vouchers/contracts category of public records. In *Sapp Roofing,* a plurality of the Court held that a private roofing contractor's payroll records, which had been submitted to the government in connection with the performance of a public project, were public records under the Act. *Id.* at 109–110, 713 A.2d at 629.[2] The Court reasoned that these documents qualified as public records "because they are records evidencing a disbursement by the school district." *Id.*

Implicit in the Court's decision in *Sapp Roofing* is the conclusion that the accounts/vouchers/contracts category of public records reaches some range of records beyond those which on their face constitute actual accounts, vouchers or contracts. Nevertheless, it is clear from *Sapp Roofing* that, to constitute a public record, the material at issue must bear a sufficient connection to fiscally related accounts, vouchers or contracts.

The second category of public records, the minutes/orders/decisions category, touches upon the decisional aspects of agency actions. In formulating such category, the legislature selected a somewhat narrower construct than was employed to define the accounts/vouchers/contracts category—the ac-

**2.** Although *Sapp Roofing* was a plurality decision, three of the five Justices participating in the decision agreed that the payroll records were public records for purposes of the Act. *See id.* at 111–112, 713 A.2d at 630. Justice Nigro concurred in the result, and Justice Cappy, in dissent, expressed his view that the materials should not be deemed public records. *Id.* at 113–114, 713 A.2d at 631.

count/voucher/contract category includes qualified records "dealing with" government receipts and expenditures; whereas, the minutes/orders/decisions category addresses qualified records "fixing" rights and duties.

The parties agree that only the minute/order/decision category of public records is implicated in this appeal. It is the burden of a party asserting a right of disclosure of materials pursuant to this category to establish that the requested material: 1) was generated by an agency as defined in the Act; 2) constitutes a minute, order or decision; 3) fixes the personal or property rights of some person or persons; and 4) is not protected by statute, order or decree of court. *See generally Tapco, Inc. v. Township of Neville,* 695 A.2d 460, 463 (Pa.Cmwlth.1997)(citing *Nittany Printing v. Centre County,* 156 Pa.Cmwlth. 404, 409, 627 A.2d 301, 303 (1993)); *Frommer v. Commonwealth, Dep't of Labor and Industry,* 667 A.2d 35, 36 (Pa.Cmwlth.1995), *appeal denied,* 544 Pa. 677, 678 A.2d 367 (1996). There is no dispute that Appellees' request meets the first of these requirements, as the audio tapes at issue were generated by the Center, an instrumentality of local government and thus an agency within the meaning of the Act. *See* 65 P.S. §66.1(1) (setting forth the statutory definition of "agency").

The Commonwealth Court has interpreted the second and third requirements to include not only records that contain some actual agency determination fixing rights or duties, but also those materials that form the basis for such a determination, are essential decisional components or otherwise derive from the decision. *See, e.g., Arduino v. Borough of Dunmore,* 720 A.2d 827, 830 (Pa.Cmwlth.1998); *Cypress Media, Inc. v. Hazleton Area School Dist.,* 708 A.2d 866, 868–869 & n. 2 (Pa.Cmwlth.1998)(stating that "[t]he document must be either the basis for or a condition precedent of the decision"). Moreover, the Commonwealth Court has also construed the term "fixing" to mean, more generally, "affecting." *Hunt v. Pennsylvania Dep't of Corrections,* 698 A.2d 147, 150 (Pa.Cmwlth. 1997). The Commonwealth Court has also stated generally, and in our view, overbroadly, that, to constitute a public

record for purposes of the Act, a record need only reflect some form of action by an agency that has an effect upon someone. *See, e.g., Vargo v. Department of Corrections,* 715 A.2d 1233, 1236 (Pa.Cmwlth.1998); *Philadelphia Newspapers, Inc. v. Haverford Township,* 686 A.2d 56 (Pa.Cmwlth.1996), *appeal dismissed,* 550 Pa. 343, 705 A.2d 1301 (1998); *Travaglia v. Department of Corrections,* 699 A.2d 1317, 1320 (Pa. Cmwlth.), *appeal denied,* 550 Pa. 713, 705 A.2d 1313 (1997).

These expansive statements notwithstanding, the Commonwealth Court's decisions have recognized the definitional limits of the Act.[3] Thus, the Commonwealth Court has acknowledged a range of documents that bear some connection to an agency determination, but nevertheless lack a sufficient nexus to meet the statutory criteria. *See, e.g., Aronson,* 693 A.2d at 265 (holding that copies of responses to a government-sponsored prevailing wage survey were not public records under the Act); *Tapco,* 695 A.2d at 464–65 (contract proposals and source audiotapes of public meetings); *Aamodt,* 502 A.2d at 776 (raw data obtained in connection with a government survey pertaining to the health effects of the 1979 nuclear accident at Three Mile Island). Indeed, the Commonwealth Court has appropriately observed that "[a] decision fixing the rights or duties of a person is just not the same as gathering information, notations and evaluations that may or may not be utilized at some future time to fix rights and duties." *Aronson,* 693 A.2d at 265. *See generally Wiley,* 393 Pa. at 347–48, 141 A.2d at 848 (finding that field investigation notes prepared by a staff member of a city planning department for purposes of report to city council members did not fall within the definition of "public records" both on the face of the definition,

---

**3.** *See, e.g., Arduino,* 720 A.2d at 830 (stating that "the mere allegation that the information may possibly have some impact on the agency's decision is not sufficient to establish that the information is an essential component of the agency's decision"); *Bargeron v. Dep't of Labor and Industry, Unemployment Compensation Bd. of Review,* 720 A.2d 500, 503 (Pa.Cmwlth.1998)("[j]ust because a document may have an effect on an agency decision does not make it an 'essential component' "); *Sierra Club v. Pennsylvania Pub. Util. Comm'n,* 702 A.2d 1131, 1135 (Pa.Cmwlth.1997), *appeal granted,* 553 Pa. 710, 719 A.2d 748 (1998)("the decision must have been contingent upon the information contained in the document and could not have been made without it").

and because of the express exclusion for reports of investigations).

■ As this line of decisions makes plain, in order to establish a right of access under the minutes/orders/decisions category of public records under the Act, a citizen must demonstrate a close relationship between requested material and an actual agency minute, order or decision fixing some right or duty. This is a correct interpretation, appropriately confined by the words of Pennsylvania's statute.[4]

■ In the present case, Appellees assert that the telephonic report to the Center formed the basis for the decision of the municipality to dispatch police and emergency personnel and equipment to the scene of the killings. Further, Appellees argue, records related to emergency operations affect emergency response policies and procedures and, therefore, the public as a whole. Appellees also contend that the information on the audio tapes supported the decision by the police to investigate and arrest William Keitel and the district attorney's decision to prosecute. For all these reasons, Appellees argue that the tapes meet the Commonwealth Court's broad construction of public records in that they reflect some form of action by an agency that has an effect on someone.

4. The provisions of the Pennsylvania Right to Know Act establish a narrower framework for public disclosure of materials underlying agency decisions than has been established by a number of other state legislatures, *see, e.g., State ex rel. Cincinnati Enquirer v. Hamilton County,* 75 Ohio St.3d 374, 662 N.E.2d 334 (Ohio 1996)(finding, under an Ohio public disclosure statute defining public records as "any record that is kept by any public office," that an audio tape recording of a 911 call was a public record), as well as by Congress under the federal Freedom of Information Act, 5 U.S.C. §552 ("FOIA"). *See generally Forsham v. Harris,* 445 U.S. 169, 183, 100 S.Ct. 977, 979, 63 L.Ed.2d 293 (1980)(considering the definition of "agency records" under FOIA by reference to the definition provided under the Records Disposal Act, 44 U.S.C. §3301, to include documentary materials "made or received by an agency of the United States Government under Federal law or in connection with the transaction of public business"). While we acknowledge the policy of broad disclosure under the Act, we are guided, in the first instance, by the words chosen by the General Assembly. Where such words are clear, we are forbidden from diverging from the plain meaning under the mere pretext of pursuing the spirit of the enactment. *See* 1 Pa.C.S. §1921(b).

Contrary to Appellees' arguments, it is clear that the information captured on the audio tapes at issue is not necessary to a complete understanding of the government's decision to dispatch emergency crews on January 1, 1998. Two people were killed—nothing could be plainer than that the immediate governmental response was justified. Rather, the relationship between specific details from the reporting conversation and agency decisionmaking is speculative and attenuated. Similarly, Appellees failed to establish that the decision to investigate, arrest or prosecute William Keitel was contingent upon the information contained in the audio tapes, or that the information was an essential component of such decisions. More fundamentally, the tapes are not closely related to the fixing of some personal or property right and thus simply are not the type of material contemplated by the General Assembly as constituting a public record pursuant to the Act.

In sum, we hold that the audio tape recordings of the telephone call to the emergency response center are neither minutes, orders or decisions fixing rights or duties, nor bear a sufficient association with such forms of agency determinations to require their disclosure under the provisions of the Act. Accordingly, the decision of the trial court is reversed, and the matter is remanded for entry of judgment in favor of Appellants.