**TRIBUNE–REVIEW PUBLISHING COMPANY and WPXI, Petitioners,**

v.

**DEPARTMENT OF COMMUNITY AND ECONOMIC DEVELOP-MENT, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 8, 2000.
Decided March 31, 2000.
Reargument Denied June 5, 2000.

Susan A. Yohe, Pittsburgh, for petitioners.

Nancy J. Kippenhan, Harrisburg, for respondent.

Before COLINS, J., SMITH, J. and JIULIANTE, Senior Judge.

JIULIANTE, Senior Judge.

The Tribune–Review Publishing Company and WPXI (collectively, Tribune) petition for review from a decision of the Department of Community and Economic Development (Department) denying their request for disclosure of documents pursuant to the statute commonly known as the Right–to–Know Law.[1] We are asked to consider whether the applications for state-funded grants under the Community Revitalization Program (Program) are public records under the Act as essential components of the Department's decision to disburse funds and as essential components of a decision of the Department fixing personal or property rights of an individual. For the reasons that follow, we reverse.

The Department is a state agency that, *inter alia*, distributes grants under the Program. The Program is designed to assist local communities in financing revitalization and improvement projects. *See* 12 Pa.Code § 123.3(b).

By letter dated June 9, 1999, the Tribune requested an electronic copy of the Department's Single Application Comprehensive Tracking Report computer database (commonly referred to as the "log") for all Program grant applications for the fiscal years 1996–97, 1997–98 and 1998–99. (Reproduced Record "R.R. 1") Specifically, the Tribune sought to review the following information: the application sequence number, the date the application was received, the applicant name and contact person, the project description, the project location, the funding requested, any notations as to whether the application was complete and consistent with the Program guidelines, the application's approval status, the amount of the grant, and the date that the applicant was notified that the application was approved. (*Id.*)

The Department responded by letter of June 15, 1999, indicating that it was undertaking a review of the Tribune's request and would, upon completion of its review, provide the Tribune with those materials satisfying the request that were public information. (R.R. 3) By letter dated June 30, 1999, the Department provided the Tribune with the following materials: a computer disk containing information regarding executed contracts of Program grants for the fiscal years 1996–97 and 1997–98, sample print-outs of the first pages of the 1996–97 and 1997–98 information, a computer disk containing information regarding executed contracts from the current Single Application electronic database, which included contracts executed from July 1, 1998 through June 30, 1999, and a print-out of the Single Application information. (R.R. 4) In essence, the Department provided information for only those Program grants that had been reduced to contract.

The Tribune renewed its request by letter of August 10, 1999, explicitly seeking information relating to grant applications that were acted upon but were denied. (R.R. 8) At this time, WPXI joined the Tribune's request for information. (*Id.*) The Department denied the Tribune's second request, maintaining that grant appli-

---

1. Act (Act) of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.4.

cations that were not reduced to contracts were not public records. This appeal followed.[2]

■ On appeal, the Tribune maintains that 1) the applications for state-funded grants are essential components of the Department's decision to disburse funds and, therefore, are public records and 2), the applications for state-funded grants are essential components of a decision of the Department fixing personal or property rights of an individual or entity and, therefore, are public records. On review of decisions under the Act, we are limited to determining whether the denial of the request for information was for just and proper cause. *LaValle v. Office of Gen. Counsel of the Commonwealth of Pennsylvania*, 737 A.2d 330 (Pa.Cmwlth.1999).

Section 2 of the Act provides that every public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth. 65 P.S. § 66.2. Section 1(2) of the Act defines "public record" as

[a]ny account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term "public records" shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material, exhibit, pleading, report, memorandum or other

paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

65 P.S. § 66.1(2).

In *North Hills News Record v. Town of McCandless*, 555 Pa. 51, 722 A.2d 1037 (1999), our Supreme Court recognized two categories of "public records" under the Act: (1) accounts, vouchers, or contracts dealing with fiscal aspects of government and (2), minutes, orders or decisions fixing personal or property rights of a person or group of persons. The Supreme Court concluded that the first category, i.e., documents dealing with the receipt or disbursement of funds, should be broadly construed, whereas the second category, documents "fixing" the rights of persons, was intended to a "somewhat narrower construct." *Id.* at 55, 722 A.2d at 1039.

■ The Tribune maintains that the unfunded grant applications fall within the latter category of "public records" inasmuch as they are essential components of the Department's determination to fund applications and they are decisions that fix personal or property rights of any person or group of persons. To establish a document as a public record that constitutes a "minute, order or decision," the person seeking the information must establish that the requested material

1) is generated by an agency covered under the Act;

**2.** This Court has jurisdiction in this appeal pursuant to Section 763(a) of the Judicial Code, 42 Pa.C.S. § 763(a), which grants this Court exclusive jurisdiction over appeals from

final orders of all Commonwealth agencies under Subchapter A of Chapter 7 of Title 2 (relating to judicial review of Commonwealth agency action).

2) is a minute, order or decision of an agency or an essential component in the agency arriving at its decision;

3) fixes the personal or property rights or duties of any person or group of persons; and

4) is not protected by statute, order or decree of court.

*Della Franco v. Department of Labor and Industry,* 722 A.2d 776 (Pa.Cmwlth.1999); *Nittany Printing & Publ'g Co., Inc. v. Centre County Bd. of Comm'rs,* 156 Pa. Cmwlth. 404, 627 A.2d 301 (1993).

■ Although not defined by statute, this Court has interpreted the definition of "public record" to include documents that are considered essential to an agency's decision. *Nittany Printing.* To be considered an essential component of an agency's decision, "the decision must have been contingent on the information contained in the document and could not have been made without it." *Id.* at 304. Merely because a document may have an effect on or influence an agency decision does not mean that it is an "essential component" of the decision. Rather, the document must be the basis for or a condition precedent for the decision. *Id.; Vartan v. Department of General Services,* 121 Pa.Cmwlth. 470, 550 A.2d 1375 (1988).

The Tribune correctly notes that while all government programs use public funds, the explicit purpose of the Program is to disburse public monies to local governments for community projects. The Program is *about* spending public funds; otherwise it would not exist.

While both parties cite numerous decisions in support of their respective positions, we are guided by our decision in *Tapco, Inc. v. Township of Neville,* 695 A.2d 460 (Pa.Cmwlth.1997). In that case, Tapco sought, *inter alia,* a copy of a proposal between the Township of Neville and Sebring and Associates and/or William Otto regarding the Township's retention of an environmental solicitor. The Township denied Tapco's request.

On appeal, the lower court denied Tapco's request for a copy of the retention proposal, concluding that because there was no signed contract between the Township and Sebring, Tapco was not entitled to Sebring's proposal. An appeal was taken to this Court.

In *Tapco,* we agreed with the lower court's determination that Sebring's retention agreement was not a public record because it was not reduced to contract. We went on to note, however, that *if* the proposal had been formalized into a contract, that proposal *as well as competing proposals* would have been subject to disclosure.

The Department attempts to distinguish *Tapco* on the basis that there was a competitive process used to determine who would be retained as the Township's environmental solicitor; whereas in the case *sub judice,* there is no competitive process used to determine which grant applications will be awarded funds. The Department maintains, rather, that the Department Secretary determines which grant applications are to be awarded funds and that the decision to fund an application is completely discretionary. While this may be true, it serves to strengthen the Tribune's position that the unfunded grant applications should be disclosed along with those grant applications that are reduced to contract.

■ Indeed, the purpose of the Act is to scrutinize the acts of public officials and to make them accountable for their use of public funds. *Envirotest Partners v. Department of Transportation,* 664 A.2d 208 (Pa.Cmwlth.1995). Thus, although the Department Secretary may have discretion in awarding Program funds, that discretion is not unfettered. The Department must still answer to the public regarding the disbursement of funds.

Presently, the Department has represented that it relies upon recommendations from legislators, as opposed to a competitive process, as the basis for determining which grant applications are to be awarded

funds. Thus, the Program is subject to potential misuse, abuse and political favoritism. If the public were not entitled to review the unfunded as well as the funded grant applications, quite conceivably a community could be continually denied Program funds while another community, with perhaps a more aggressive or persuasive representative, could be repeatedly awarded funds. Besides the politically based recommendations, the Department has offered no other selection process for the award of funds under the Program.[3] The current selection process certainly appears to fly in the face of the purpose of the Act.

We are also guided by our decision in *Vartan.* In *Vartan,* the petitioner had submitted several proposals in response to the Department of General Services's (DGS) requests for proposals for the leasing of office space for the Department of Public Welfare (DPW). After several requests for proposals, the contract was awarded to another individual. Thereafter, the petitioner sought various information regarding the winning proposal and those proposals rejected by the DGS.

The DGS responded to the petitioner's request, stating that the information sought did not fall within the definition of public records under the Act. On appeal to this Court,[4] we agreed with the petitioner that under the Act, he was entitled to review a list of those submitting proposals. In *Vartan,* we recognized several decisions where we held that lists of names, or documents from which lists may be compiled, are public records. *See Hoffman v. Pennsylvania Game Comm'n,* 71 Pa.

Cmwlth. 99, 455 A.2d 731 (1983) (subscriber mailing list for the *Pennsylvania Game News); Mergenthaler v. Pennsylvania State Employes' Retirement Board,* 33 Pa. Cmwlth. 237, 372 A.2d 944, *confirmed en banc,* 33 Pa.Cmwlth. 237, 381 A.2d 1032 (1978) (list of names and addresses of retired State employees); *Young v. Armstrong Sch. Dist.,* 21 Pa.Cmwlth. 203, 344 A.2d 738 (1975) (list of names and addresses of kindergarten children); *Kanzelmeyer v. Eger,* 16 Pa.Cmwlth. 495, 329 A.2d 307 (1974) (list of attendance records of school districts); *Friedman v. Fumo,* 9 Pa. Cmwlth. 609, 309 A.2d 75 (1973) (list of persons who had taken the examination to qualify as certified public accountants).

We further recognized in *Vartan* that the DGS could not be forced to compile a list to satisfy the petitioner's request. *See Hoffman.* Similarly, the Department cannot be forced to compile a list of unsuccessful grant applications; however, it can be compelled to provide information sufficient to allow the Tribune to compile its own list.[5]

The Department directs our attention to *Cypress Media v. Hazleton Area Sch. Dist.,* 708 A.2d 866 (Pa.Cmwlth.1998), *appeal dismissed as improvidently granted,* 555 Pa. 340, 724 A.2d 347 (1999), in support of its position that the unfunded grant applications are not public records. We find *Cypress Media* to be distinguishable.

There, Cypress Media requested access to the applications of candidates whom the school district found qualified to teach in its schools. The school district denied the

---

3. We note that the Department could fund the applications on a first-come/first-serve basis, it could attempt to fund as many applications as possible given the Program's budget, or it could develop objective criteria by which to judge the merits of the applications.

4. During the pendency of the appeal, the DGS executed the lease for the office space with the successful bidder and promptly forwarded to the petitioner the following information: a copy of the lease, the successful proposal, the

site delineation and proof of ownership of the site.

5. There is no allegation that the information required by the grant applications is confidential; therefore, there would be no need to redact any portion of the applications. However, if confidential information, such as social security numbers, were contained in the grant applications, the Department would be required to redact that information prior to the Tribune's review of the grant applications.

request, advising Cypress Media that since the applications contained confidential information, they were not public records.

An appeal was taken to the lower court, which agreed with the school district's determination. Testimony established that a teacher/pupil committee interviewed prospective applicants and made recommendations to the school board, which then hired teachers based upon the recommendations. The teacher/pupil committee did not have access to the applicants' applications. Rather, only three individuals had access to them: the school superintendent, his secretary and the director of curriculum. Thus, the lower court concluded that since neither the teacher/pupil committee nor the school board reviewed the applications, they were not "essential components" of the hiring decision and hence, not public records.

In affirming the lower court, we noted that although the applications were formal prerequisites for the school board's decision to hire teachers, the applications were not "essential components" of the school board's decision since it never reviewed them.

In the case *sub judice*, the only explanation offered for the selection of grant recipients is that local legislators make recommendations to the Department. As Program funds are not unlimited, there needs to be some objective method of determining which grant applications are more worthy of receiving grant funds than others, even among those recommended by elected officials. This is, of course, an objective comparison of the grant applications. As such, they are essential components to the Department's decision as to which applications to award funding and which applications to deny funding. The minimization of politics in the selection process is essential.

 Accordingly, we conclude that all applications for funds under the Program constitute public records under the Act inasmuch as they are essential components

to the Department's decision as to which applications receive grants under the Program.

The decision of the Department is reversed.

## ORDER

AND NOW, this 31st day of March, 2000, it is hereby ordered that the decision of the Department of Community and Economic Development denying the Tribune–Review Publishing Company and WPXI access to unfunded Community Revitalization Program grant applications is reversed.