**Christopher HEFFRAN, Petitioner**

v.

**DEPARTMENT OF CORRECTIONS, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 22, 2005.

Decided July 15, 2005.

Christopher Heffran, petitioner, pro se.

Laura J. Neal, Camp Hill, for respondent.

BEFORE: PELLEGRINI, J., LEAVITT, J., and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Christopher Heffran (Petitioner) petitions for review of an adjudication of the Pennsylvania Department of Corrections (DOC) denying his request for documents that was made pursuant to the statute commonly known as the Right–to–Know Law.[1]  DOC held that the documents Petitioner requested, which were incident reports and disbursement sheets for chemicals used in the facility, were not public records required to be made available under the Right–to–Know Law.

Petitioner is incarcerated at SCI–Graterford.  On May 5, 2004, Petitioner requested, in writing, that SCI–Graterford's public information officer produce ten documents relating to the use of chemicals in the prison's shops and their impact on inmates exposed to them.[2]  When DOC did

---

1. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.9.

2. Petitioner's request stated as follows:

(1) A copy of the incident report written by John Mellinger, Foreman C.I. Shoe Shop, detailing inmate Chris Heffran Becoming Ill & votiming (sic) from the chemicals he works with.  This incident report was written April 24th, 2004, at approximately 2:00 PM.

(2) The requested copy of any order handed down by the Department of Corrections directing it's (sic) Fire & Safety Officer, Mark Atkinson, to (inspect) the C.I. Shoe Shop rubber room.

(3) The requested copy(s) of the weekly or monthy (sic) account (or ledger) detailing Fire & Safety Officer Mark Atkinson's inspection of the C.I. Shoe Shop rubber mill room.

(4) The Requested copies of weekly and monthy (sic) disbursement sheets of the

chemicals used in the C.I. shoe shop rubber mill.

(5) The copies of the material safety data sheets for the following chemicals used in the making of rubber: Algerite resin, Altax, Captax, Carbowax, SunProof, Stearic Acid, Timit D, Zinc Oxide, D.P.G. Sulpher (sic), and Hi–Sil.

(6) Added from last request: A copy of the incident report detailing John Mellinger escorting inmate Jose Hernandez to dispensary because of his asthma attack.  Incident date April 30th, 2004.

(7) A copy of any work order sent to maintenance at SCI–Graterford for the fixing of the rubber mill's vacuum system.

(8) A copy of the work order directing the maintenance department of any other Department to install a ventilation fan in Graterford's C.I. rubber mill room.

(9) Also added since last request:  A copy of the account-receipt for the purchase of a ventilation fan for the C.I. shoe shop's rub-

not respond, on May 29, 2004, Petitioner filed "exceptions" with Jeffrey Beard, Secretary of Corrections, stating the reasons why the requested documents were public records that had to be made available under the Right–to–Know Law. DOC received this letter on June 7, 2004, treated it as an initial request and forwarded it to DOC's Right–to–Know Officer.[3] On June 22, 2004, the officer notified Petitioner that she needed additional time to review his request.

On July 27, 2004, the Right–to–Know Officer responded to each of Petitioners' requests. She granted some requests and denied others.[4] The request for DOC's order to its Safety Officer to inspect the prison's shoe shop was denied as non-existent. The other documents were denied because either they were not public records or, alternatively, they were public records that did not have to be disclosed under the safety and security exception. Petitioner filed exceptions, and on September 1, 2004, DOC affirmed the decision of the Right–to–Know Officer. Petitioner then sought this Court's review.

■ On appeal,[5] Petitioner challenges DOC's refusal with respect to three of his requested documents,[6] which are:

> ber mill room (or in the contrast its acquisition to have an outside contracter (sic) install this ventilation fan).
> (10) A copy of the Right to Know Chemical Sheet I refused to sign the week of April 23rd because I had not been given the information.
> Supplemental Reproduced Record at 5b–7b (S.R.R.——).

(1) A copy of the incident report written by John Mellinger, Foreman C.I. Shoe Shop, detailing inmate Chris Heffran Becoming Ill & votiming (sic) from the chemicals he works with. This incident report was written April 24th, 2004, at approximately 2:00 PM.

\* \* \*

(4) The Requested copies of weekly and monthy (sic) disbursement sheets of the chemicals used in the C.I. shoe shop rubber mill.

\* \* \*

(6) Added from last request: A copy of the incident report detailing John Mellinger escorting inmate Jose Hernandez to dispensary because of his asthma attack. Incident date April 30th, 2004.

S.R.R. 5b–7b. Petitioner raises three issues with respect to DOC's denial of these items. First, he contends that DOC erred in holding the incident reports not be public records because they are "decisions" that fix the rights of inmates. Second, he contends that DOC erred in holding the chemical disbursement sheets not to be public records because they relate to the

---

3. As noted by DOC, Petitioner's initial request was not sent to DOC's agency head or person designated by rule to accept Right–to–Know requests as required by Section 2 of the Right–to–Know Law, 65 P.S. § 66.2.

4. The Officer granted the requests for Nos. 9 and 10. She denied Petitioner's request for the records identified at Nos. 1, 6, 7 and 8,

contending they did not meet the general definition of a public record in that none of the documents "fixed" any rights or duties. She further denied Petitioner's request for the records identified at Nos. 3, 4 and 5, concluding they fell under the personal security exception to the general definition of public record; their release could present a threat to the safety and security of the facility.

5. Our standard of review is whether constitutional rights have been violated, whether an error of law has been committed or whether findings of fact are supported by substantial evidence. *Martella v. Department of Transportation*, 841 A.2d 633, 635 (Pa.Cmwlth.2004).

6. Petitioner raised the denial of request No. 5 in his petition for review but not in his brief.

fiscal governance of DOC. Third, he contends that DOC's finding that disclosure of the chemical disbursement sheets posed a threat to security is not supported by substantial evidence.

■ The Right–to–Know Law provides generally that "a public record shall be accessible for inspection and duplication by a requester in accordance with this act." Section 2(a) of the Right–to–Know Law, 65 P.S. § 66.2(a). "Public records" fall into two categories: (1) an account, voucher or contract dealing with the receipt or disbursement of funds by an agency, or (2) a minute, order or decision by an agency fixing personal or property rights. Section 1 of the Right–to–Know Law, 66 P.S. § 66.1. The first category relates to the fiscal aspects of agency governance, and it includes accounts, vouchers or contracts dealing with receipts of and disbursements by an agency. *Sapp Roofing Co., Inc. v. Sheet Metal Workers' International Association, Local Union No. 12,* 552 Pa. 105, 109, 713 A.2d 627, 629 (1998). The second relates to agency decisions that fix the rights and duties of some person or persons. *North Hills News Record v. Town of McCandless,* 555 Pa. 51, 55, 722 A.2d 1037, 1039 (1999). Both categories reach a range of records beyond those that on their face identify themselves to be accounts, vouchers or contracts, or minutes, orders or decisions. Nevertheless, in order to be a public record, a document in this range must have a close connection to those specified in Section 1 of the Right–to–Know Law. *LaValle v. Office of General Counsel of the Commonwealth,* 564 Pa. 482, 493, 769 A.2d 449, 456 (2001).

■ With these principles in mind, we consider, first, Petitioners contention that the prisons incident reports are public records. He argues that the incident reports formed the basis for DOC's decision to provide inmates medical treatment, thereby fixing their rights. Stated otherwise, Petitioner asserts that the incident reports fall into the "decision" category of public records.

In support, Petitioner directs our attention to *Tapco, Inc. v. Township of Neville,* 695 A.2d 460 (Pa.Cmwlth.1997), in which this Court held that police incident reports were public records within the meaning of the Right–to–Know Law. In *Tapco,* we observed that prior precedent[7] had established that police incident reports are "police blotters," which are defined as public records under the Criminal History Records Information Act.[8] We then reasoned that the more general Right–to–Know Law necessarily extended to all documents specifically defined as public records in other statutes. Because police incident reports, or police blotters, were defined as public records under the specific Criminal History Records Information Act, *a fortiori,* they were public records under the Right–to–Know Law. *Tapco, Inc.,* 695 A.2d at 464.

■ Petitioner's reliance on *Tapco, Inc.* is misplaced. Unlike a police blotter, a correction facility incident report is not defined by another statute as a public record. Accordingly, the determination as to whether the prison incident reports fall into the "decision" category of public records is governed solely by the Right–to–Know Law. A "decision" is a document (1) that was generated by an agency, (2) that

---

**7.** *See Lebanon News Publishing Company v. City of Lebanon,* 69 Pa.Cmwlth. 337, 451 A.2d 266, 268 (1982)

**8.** 18 Pa.C.S. § 9104(b) provides:

Court dockets, police blotters and press releases and information contained therein shall, for the purpose of this chapter, be considered public records.

constitutes a decision or was an essential component to an agency's decision, (3) that fixes the personal rights of a prisoner, and (4) that is not protected by statute, order or decree of court. *Town of McCandless,* 555 Pa. at 56, 722 A.2d at 1039.

Petitioner concedes that the incident reports are not decisions on their face; however, he contends that they are closely related to an essential component of DOC's decision to treat inmates and, thus, are public records. To advance his argument on this close relationship between an incident report and treatment of inmates, he argued in his petition for review as follows:

> [When the two inmates became ill, it] was determined by the foreman in charge...that these inmates required medical attention. As a result *this foreman decided to seek medical attention and recorded his decision to do so on the in question incident reports.* These incident reports exist as a direct result of the incident and the subsequent decision by the person filling them out to seek medical attention for the two inmates.

S.R.R. 33b (emphasis added).[9] DOC counters that the foreman's notation does not represent an essential component of a "decision" but records a mere recitation of an historical fact. We agree.

█ Information is considered an essential component of the agency's decision if the agency could not have made the decision without that information. *Arduino v. Borough of Dunmore,* 720 A.2d 827, 830 (Pa.Cmwlth.1998). The fact that the requested information may have impacted an agency's decision does not establish that it is an essential component of the agency's decision. *Id.* The document must either be the basis for or a condition precedent of the decision in order to constitute a public record. *Nittany Printing & Publishing Co., Inc. v. Centre County Board of Commissioners,* 156 Pa.Cmwlth. 404, 627 A.2d 301, 304 (1993).

As noted above, Petitioner's own petition for review states that "the foremen" simply "recorded" a decision in the incident report.[10] Since the decision was recorded in the incident report, it is impossible that this report could have been the basis of the decision. Further, Petitioner did not show that medical treatment is given only after an incident report is issued. Petitioner does not even allege that DOC staff reviewed the incident reports in deciding when, whether, or how, to treat the inmates. Because the incident reports did not constitute an essential component of DOC's decision to provide inmates with medical treatment, they are not public records.

█ Next, we consider Petitioner's contention that the prisons weekly and monthly chemical disbursement sheets are public records. Petitioner contends that because they record the amount of chemicals used in the facility's shoe shop on a weekly and monthly basis and are purchased by DOC, they are "accounts" within the meaning of the Right–to–Know Law. DOC counters that chemical disbursement sheets do not record business dealings and were not essential to any fiscal decision of the department.

█ The word "account" is to be broadly construed to cover far more than records of debit and credit entries during a

---

**9.** Petitioner's brief incorporates by reference his petition for review.

**10.** Petitioner's argument is circular. The incident report, he claims was an essential component of a DOC decision, but that decision was made and implemented *before* the incident report was issued.

particular fiscal period. *LaValle v. Office of General Counsel of Commonwealth,* 737 A.2d 330, 332 (Pa.Cmwlth.1999). Even under this broad meaning, the requested material must bear "a sufficient connection" to fiscally related accounts, *McCandless,* 555 Pa. at 55, 722 A.2d at 1039, and must constitute an essential component of an agency decision. *Sapp Roofing,* 552 Pa. at 110, 713 A.2d at 629.

■ Petitioner's own description of the chemical distribution sheets defeats his argument that they are accounts. Petitioner explains that

> these documents are simply accounts of how much of each chemical was used per week and/or month to make rubber in the rubbermill room. The only information contained in these disbursement sheets is the chemicals common name, starting balance weight per week/month and ending balance in weight per week.

S.R.R. 35b. How or why materials are used in a state correctional facility has nothing to do with their purchase. By contrast, a document relating to the dis-

bursement of funds to purchase these chemicals is, by definition, a public record. *Vargo v. Department of Corrections,* 715 A.2d 1233, 1238 (Pa.Cmwlth.1998). Because Petitioner cannot relate the chemical disbursement sheets, which record disbursement of chemicals at the prison, to the fiscal governance of DOC, he has failed to show that these documents are "accounts" that must be disclosed.[11]

Accordingly, we affirm the adjudication of DOC.

### ORDER

AND NOW, this 15th day of July, 2005, the order of the Department of Corrections dated September 1, 2004, in the above-captioned matter is hereby affirmed.

---

**11.** In its adjudication, DOC concluded that the disbursement sheets could provide inmates with information that could be used to concoct a toxic chemical compound and, thus, their disclosure could affect the safety and security of the facility. Such documents, even if public records, do not have to be disclosed under the Right-to-Know Law. Section 1 of the Right–to–Know Law, 65 P.S. § 66.1 (definition of public record). Petitioner asserts that this finding is not supported by substantial evidence. Because we conclude that the chemical disbursement sheets are not public records, we need not address the question of whether these documents were subject to the personal security exception.