**Paul VAN OSDOL, Petitioner**

v.

**DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 5, 2006.

Decided Oct. 12, 2006.

---

Gayle C. Sproul, Philadelphia, for petitioner.

Stephen F.J. Martin, Asst. Counsel and P. Oliver Kerwin, Asst. Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and PELLEGRINI, Judge, and McCLOSKEY, Senior Judge.

OPINION BY President Judge COLINS.

Paul Van Osdol petitions for review of the September 30, 2005 Final Determination of the Department of Transportation (Department) affirming the Department's denial of Van Osdol's request for certain information and records pursuant to the law known as the Right-to-Know Act (RTKA).[1]

Pursuant to the RTKA, Van Osdol requested the Department's list of hazardous intersections and locations in Allegheny, Beaver, Washington, and Westmoreland Counties for the years 2002 through 2005, along with related annual progress reports and correspondence. In his request, Van Osdol averred that the requested records are maintained as part of the Federal Highway Administration's Hazard Elimination Program and "Title 23 Chapter 152 of the U.S.Code."

Van Osdol's request was denied on the grounds that the records requested did not meet the definition of "public record,"[2]

---

1. Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§ 66.1–66.9.

2. Section 1 of the RTKA, 65 P.S. § 66.1, defines "public record" as follows:

Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges,

immunities, duties or obligations of any person or group of persons: Provided, That the term "public records" shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties, except those reports filed by agencies pertaining to safety and health in industrial plants; it shall not include any record, document, material,

under the RTKA and, alternatively, that the requested records were exempt from disclosure pursuant to the investigative exception to the definition of public record. Van Osdol filed exceptions to the decision and by a Final Determination dated September 30, 2005, a Department hearing officer affirmed the RTKA official's denial of Van Osdol's request. This appeal followed.[3]

On appeal, Van Osdol first argues that the Department erred in its determination that the requested records do not meet the RTKA's definition of "public records" because one category of records requested, the contract category, is comprised of accounts, vouchers, contracts, disbursements, and receipts that are submitted to the federal government by the Department in order to receive federal funding under the Department of Transportation's Hazard Elimination Program to effectuate repairs. Van Osdol contends that because such repairs have unarguably been made and because federal funds have been expended to pay for such repairs, and for their related contracts and vouchers, the Department cannot now assert that the foregoing records do not fall within the ambit of "public records."

Van Osdol also argues that the Department erred in concluding that the second category of records requested, the "decisions category," consisting of minutes, orders, or decisions of the agency, or an essential component of such minutes, orders or decisions were not "public records," when the foregoing are necessary for the implementation of road repairs and/or the documentation of such repairs. Additionally, Van Osdol takes issue with the Department's finding that he failed to establish the requisite "close connection" of the requested records to any account, voucher, or contract, and that he failed to show that the requested materials were necessary parts of any Departmental decision, only that they might possibly be necessary. Relying upon *LaValle v. Office of General Counsel,* 564 Pa. 482, 498 n. 13, 769 A.2d 449, 459 n. 13 (2001), Van Osdol claims that once a "colorable claim" of connection is made by the requestor, as in this case, the burden shifts to the agency, in this case, the Department, to produce evidence supporting its refusal to disclose the requested records. It is Van Osdol's position that he established more than "a colorable claim" by proving a logical nexus between the documents requested and agency contracts and/or decisions. Finally, Van Osdol argues that because the Department's determination that the requested material did not meet the statuto-

---

exhibit, pleading, report, memorandum or other paper, access to or the publication of which is prohibited, restricted or forbidden by statute law or order or decree of court, or which would operate to the prejudice or impairment of a person's reputation or personal security, or which would result in the loss by the Commonwealth of any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act.

**3.** Prior to the General Assembly's 2002 amendments to the RTKA, this Court's scope of review was whether the denial of access to

public records was for just cause. *Tribune–Review Publishing Company v. Department of Community and Economic Development,* 814 A.2d 1261, 1263 n. 2 (Pa.Cmwlth.2003), affirmed, 580 Pa. 80, 859 A.2d 1261 (2004). The 2002 amendments to the RTKA omitted the just cause standard. 65 P.S. § 66.4. Without a specific scope of review from the General Assembly, we apply the standard one for an appeal from an administrative agency as set forth in Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704: whether constitutional rights have been violated, whether an error of law has been committed, or whether findings of fact are supported by substantial evidence.

ry definition of public records was unreasonable, he is entitled to reimbursement of attorney fees and legal costs incurred with this action.

The Department avers that the RTKA's definition of a "public record" includes materials comprising minutes, orders, or decisions of an agency or an essential component of such minutes, orders, or decisions. 65 P.S. § 66.1. The Department contends that its Final Determination correctly concluded that the records requested by Van Osdol: (1) do not meet the RTKA's definition of a "public record"; (2) do not have a sufficiently close relationship with identifiable public records in either the "contracts category" or the "decisions category" to satisfy the public record definition; and (3) fall within the "investigative" exception to the definition of a public record.

Additionally, the Department argues that it did not err in denying Van Osdol's request considering that the material he requested could not be deemed "essential components" of a "minute, order, or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons," but were merely tangentially related by implication. The Department also challenges Van Osdol's failure to point to any specific decision affecting the rights of any specific individual or group, and his reference only to the Department's expansive decision-making process used to prioritize highway projects that ultimately may affect the public. It is the Depart-

ment's position that Van Osdol has not established the existence of any close relationship between the records he requested and fiscally related accounts or contracts.

Further, the Department avers that the materials requested by Van Osdol fall within the exceptions to the definition of "public record" in the RTKA as both investigative materials and as materials "access to or the publication of which is . . . . restricted ... by statute law." 65 P.S. § 66.1. According to the Department, Federal law, specifically 23 U.S.C. § 409, provides that information compiled or collected pursuant to the Hazard Elimination Program (HEP) shall not be subject to discovery or admitted into evidence in any federal or state court proceedings involving an action for damages arising from an occurrence at a location mentioned in such documents,[4] and that the Pennsylvania Vehicle Code, 75 Pa.C.S. § 3754(b), provides analogous protection. This prohibition, avers the Department, applies equally to Van Osdol's RTKA request, which is, essentially a discovery demand. Finally, the Department argues that because its determination was based upon a reasonable interpretation of the law, no attorney fees should be awarded to the Petitioner.

Upon review of the present matter within the rationale established by the Supreme Court in *Tribune–Review Publishing Company v. (DCED)*, 580 Pa.80, 859 A.2d 1261 (2004), we concur with the Department's determination that the material Van Osdol requested, specifically items

---

4.  23 U.S.C. § 409 provides in relevant part that:

    reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, ... or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State Court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

that include but are not limited to lists of hazardous intersections and annual progress reports created, collected, and/or maintained by the Department, are not properly "public records" within the meaning of the RTKA. In *Tribune–Review,* the Supreme Court set forth the following discussion in deciding what does and does not constitute a "public record":

The substantive issue here concerns whether unfunded Program grant applications are "public records" within the ambit of Section 1(2) of the Act. That section provides in relevant part that a "public record" is "[a]ny account, voucher or contract dealing with the receipt or disbursement of funds by an agency ... and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons ..." 65 P.S. § 66.1(2). The Act requires public access for "examination and inspection" only of decisional documents and writings that accompany or memorialize funding. Therefore, the inquiry becomes whether "the log" falls within either of these categories.

Neither "the log" nor the information it contains could be characterized fairly as an account, contract, or voucher to accompany or memorialize funding. Likewise, "the log" is not a minute, order or decision of DCED that fixes any rights, privileges, immunities, duties, or obligations. While the database does indicate whether certain applications have been awarded Program funding, it is simply an electronic storage facility, and not a decisional document. Moreover, we have recently confirmed that the Act is designed to require disclosure only of documents prepared by the government agency or at the express direction of the government agency. "The log" is compiled by DCED, but it is merely a collation of data provided by

Program applicants. Whereas the Act allows the public to review agency documents, it does not permit public consumption of documents created by private entities, unless done at the express direction of the agency. Consequently, a database that is simply an assemblage of information provided by applicants cannot be deemed a public record simply because the agency undertakes the secretarial task of inputting data.

*Tribune–Review,* 859 A.2d at 1268 (citations omitted). Applying the above guidelines to Van Osdol's request for a list of hazardous intersections and locations in Allegheny, Beaver, Washington, and Westmoreland Counties for the years 2002 through 2005, along with related annual progress reports and correspondence, we concur with the Department's position that this requested material does not constitute "public records." Van Osdol's requested material, similar to "the log" requested in *Tribune–Review,* cannot be categorized as an account, contract, or voucher to accompany or memorialize funding. Moreover, such material cannot be deemed to have a sufficient connection to accounts, contracts, or vouchers. Likewise, the requested lists of hazardous intersections and locations with related material, as in the case of the "log" in *Tribune–Review,* cannot be deemed to be minutes, orders, or decisions of the Department that establish any rights, privileges, immunities, duties, or obligations.

The failure of requested material to fall within the ambit of "public records," within the meaning of the RTKA was addressed in detail by this Court in *Berman v. Pennsylvania Convention Center Authority,* 901 A.2d 1085, 1089–90 (Pa.Cmwlth.2006)[*emphasis added*], wherein the Court noted:

The heart of this case concerns Berman's contention that the requested in-

formation is within the meaning of "public records" and the Authority's assertion that it is not. . . . The court noted that in *Sapp Roofing Co., Inc. v. Sheet Metal Workers' Int'l Ass'n,* Local Union No. 12, 552 Pa. 105, 713 A.2d 627 (1998), a plurality held that a private roofing company's payroll records, which had been submitted to the government in connection with performance of public projects, were public records evidencing a disbursement. Implicit in Sapp Roofing was the reasoning that the "accounts" category reaches a range of records beyond those that on their fact constitute accounts, vouchers or contracts but that the material must bear a *sufficient connection* to accounts, vouchers and contracts.

In *North Hills News Record [v. Town of McCandless,* 555 Pa. 51, 722 A.2d 1037 (1999)], citizens sought access to tapes of all telephone calls to a town's emergency center relating to a fatal shooting, which pertained to the "minutes, order or decision" category. The party asserting a right of access to material in this category must establish that it (1) was generated by an agency as defined in the Act; (2) constitutes a minute, order or decision; (3) fixes the personal or property rights of some person or persons; and (4) is not protected by statute, order or decree of court. *Id.* The second and third requirements had been interpreted to include not only actual determinations fixing rights and duties but also materials that form the basis for such determinations and are essential components or otherwise derive from the decision. The Supreme Court stated that this Court had recognized a range of documents that lacked a sufficient nexus, such as copies of responses to a government-sponsored prevailing wage survey, and had observed that " '[a] decision fixing the rights or duties

of a person is just not the same as gathering information, notations and evaluations that may or may not be utilized at some future time to fix rights and duties.' " *Id.,* 555 Pa. at 57, 722 A.2d at 1040 (quoting *Aronson v. Pennsylvania Department of Labor and Industry,* 693 A.2d 262, 265 (Pa.Cmwlth.1997)).

In *LaValle v. Office of General Counsel,* 564 Pa. 482, 769 A.2d 449 (2001), certain senators sought access to a report prepared by an accounting firm as a consultant to the Department of Transportation relating to the claims for damages by the company initially contracted to perform automobile emissions testing at centralized locations. The Supreme Court elaborated upon the opinions in Sapp Roofing and North Hills News Record. It observed that the Act reaches some materials that are not facially accounts, vouchers, contracts, minutes, orders or decisions, but the party seeking to inspect must establish some *close connection* between a statutory category and the material sought, which derived from rulings of this Court that materials were accessible if they were an *"essential component"* of minutes, orders or decisions. The Supreme Court held that the requirement of close relation emphasized in Sapp Roofing and North Hills News Record applied to both categories of records and that such "unitary interpretation" was preferable to a broader interpretation of the minutes, orders or decisions category under certain decisions from this Court.

In addition to failing to prove a "close connection" between his requested lists of hazardous intersections and vouchers, contracts, and other fiscal material, Van Osdol also fails to present any specific Departmental decision or order of which his requested material would be an essential component within the meaning of *Berman.*

Even assuming *arguendo* that Van Osdol did successfully reference a specific decision of the Department, the pre-decisional information he requests would not automatically be deemed an essential component of the decision unless it met certain requirements. In this regard, this Court in *Berman*, 901 A.2d at 1091–92, noted:

> The fact that information may have had some impact on an agency decision does not make it an essential component; a document must be a basis for or a condition precedent of a decision. *Nittany Printing & Publ'g.*

> . . . .

> Construction plans that may exist at this time are subject to change. They are in the nature of the pre-decisional proposals, i.e., internal deliberative aspects of agency decision making that the court in LaValle held not to be subject to public scrutiny and the type of communication that cannot be an account, voucher, or contract or a decisional document fixing rights or obligations of anyone that the court referenced in Tribune–Review.

In the present matter, the material Van Osdol requests unarguably would be considered pre-decisional and part of the internal deliberative aspects of agency decision-making. Accordingly, based upon the foregoing discussion, we affirm the Department's Final Determination.

### ORDER

AND NOW, this 12th day of October 2006, the Final Determination of the Pennsylvania Department of Transportation in the above-captioned matter is affirmed.