# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Liz Evans Scolforo and       :
The York Dispatch,             :    CASES CONSOLIDATED
                Appellants    :
                            :
          v.            :    No. 359 C.D. 2021
                            :
The County of York         :
                            :

Liz Evans Scolforo,         :
                            :
             Appellant    :
                            :
          v.            :    No. 360 C.D. 2021
                            :    Argued: September 12, 2022
The County of York         :
                            :

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY
PRESIDENT JUDGE COHN JUBELIRER           FILED: July 10, 2023

Before the Court are two consolidated appeals arising out of a Right-to-Know Law (RTKL)[1] request for name, salary, job title, and length of service, including start and end dates, for employees of the York County Prothonotary's Office (Prothonotary) by Liz Evans Scolforo and The York Dispatch (together, Requester). In the first appeal, Requester argues the Court of Common Pleas of York County (common pleas) erred in its January 25, 2021 decision (January Decision) affirming the Final Determination of the Office of Open Records (OOR), which concluded the

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

OOR lacked jurisdiction over the records at issue in Requester's appeal because Prothonotary is a judicial agency and the requested records are "of" that judicial agency. The January Decision also directed York County (County) to refer Requester's RTKL request to the 19th Judicial District Records Manager (Judicial Records Manager). Requester asserts Prothonotary is not a judicial agency but a county agency, the requested records are those "of" County and not "of" the judicial agency, and common pleas should not have directed the transfer of the matter to Judicial Records Manager.

In the second appeal, Requester challenges common pleas' President Judge Musti Cook's (President Judge) March 17, 2021 decision (March Decision) that confirmed Judicial Records Manager's decision that followed the matter's transfer under the January Decision. Judicial Records Manager ordered the disclosure of the name, salary, and job title of Prothonotary employees as a financial record, but redacted from that disclosure the hiring and termination dates (the length of service) of those employees, reasoning they were not a financial record subject to disclosure. Requester argues the length of service dates are clearly disclosable under the RTKL or Pennsylvania Rule of Judicial Administration 509, Pa.R.J.A. 509 (Rule 509) (governing the disclosure of financial records of the judiciary).

Thus, in these appeals, we must determine: (1) if Prothonotary is a judicial agency; (2) if so, are the requested records of Prothonotary rather than of County; and (3) if the requested records are of Prothonotary, is the length of an employee's service a financial record subject to disclosure? We answer the first two questions in the affirmative and, therefore, affirm the January Decision upholding the OOR's conclusion that it lacked jurisdiction over Requester's appeal. However, we answer the last question in the negative, concluding Prothonotary employees' length of

2

service records bear a "sufficiently close connection" to the "fiscally related" categories in the RTKL's definition of financial record and deal with the disbursement of public monies making them disclosable pursuant to *City of Harrisburg v. Prince*, 219 A.3d 602 (Pa. 2019). Therefore, we reverse the March Decision affirming the redaction of that information from the records provided to Requester.

## I.    BACKGROUND

### A. *The Requests*

Requester's attempts to obtain records relating to Prothonotary employees have been numerous, and the responses thereto have been conflicting. Requester first submitted a RTKL request to County on July 28, 2020, requesting "the number of employees who have resigned from the York County Prothonotary['s] Office between Jan[uary] 3, 2020, and July 28, 2020, as well as the number of years of service each resigning employee had with the office." (Reproduced Record (R.R.) at 45a, 172a.) County replied that Prothonotary "is a court office and therefore this request must be submitted through the court's RTK office." (*Id*. at 45a.)

On July 29, 2020, Requester submitted a request under Rule 509 via email to Judicial Records Manager.[2] Therein, Requester stated "Prothonotary employees are considered employees of a judicial agency[,]" and "[t]he court has a legal duty to provide access to financial records[]" (Prior Request). (*Id.* at 16a, 52a-53a.) Judicial Records Manager denied the Prior Request, explaining:

> Employees in [ P]rothonotary's office are subject to the joint
> supervision of independently elected officials of county government

---

[2] The relevant email communications can be found in the Original Record for 359 C.D. 2021 at Item No. 8 and in the Reproduced Record at pages 44a-63a.

([ P]rothonotary and the county commissioners) who are not under the jurisdiction of me, the president judge, nor any other member of the state judiciary regarding hiring, firing, promoting, demoting, disciplining, terminating, or compensating those employees. The court has absolutely no authority over, responsibility for, nor access to any personnel record of any employee in [ P]rothonotary's office. Furthermore, even if we did have access to that information, it would not be a financial record of funds appropriated to the court subject to the RTKL as it pertains to the judiciary. As such, your request to this office remains denied. If you want access to county employee records, which may or may not be subject to disclosure under the RTKL by the keeper of those records, you need to direct that request to the county agency that has access to and control of those records. If you disagree with my decision, your option is to file an appeal to the president judge.

(*Id*. at 52a.)

After receiving this denial, Requester emailed the then-president judge of common pleas and County Solicitor (Solicitor), explaining County told her the information must come from Judicial Records Manager, and Judicial Records Manager told her it must come from County. (*Id*. at 51a.) Further emails were exchanged in which Requester indicated their "media attorney" confirmed Prothonotary was a judicial agency position, and Judicial Records Manager responded Requester's attorney was incorrect and the records had to be sought from County. (*Id.* at 52a-53a.) According to Requester, the then-president judge called her on July 30, 2020, to explain the court administration office did not have the records she was requesting and "those records must come from [] County." (*Id*. at 50a.) Requester did not appeal this denial.

Instead, on August 10, 2020, Requester sent an email to County, making a second RTKL request, explaining:

This RTKL request does NOT replace my July 28[, 2020] RTKL request seeking similar information. I have heard nothing from [C]ounty about that request since a county official erroneously stated

4

that I should be getting that information elsewhere. I believe [] County should still be actively handling the July 28[, 2020,] RTKL request. Today's request is merely similar.

If the July 28[, 2020,] request is NOT actively being handled, please alert me so I may contact the Office of Open Records about my options. Had [S]olicitor [] ever gotten back to me, I wouldn't be unsure about the status.

. . . I am requesting access to salary records for all [P]rothonotary employees from Jan[uary] 1, 2020, to present, showing name, salary, job title and length of service, including start and end dates, please.

(*Id.* at 54a (emphasis omitted).) The next day the Solicitor's Office responded, explaining Requester "was advised that [her July 28, 2020] request would have to be submitted to the" Judicial Records Manager, and "[t]hat request was, therefore, closed as a County Open Records Request and no further action was taken." (*Id.* at 59a.)

Requester filed the request at issue on August 11, 2020 (Request), seeking electronic copies of "salary records for all [P]rothonotary employees from Jan[uary] 1, 2020, to present, showing name, salary, job title and length of service, including start and end dates." (*Id.* at 64a.) On August 14, 2020, County denied that Request, explaining:

Based upon statutory language and case law, the records you are seeking are records of a judicial agency. Under the Pennsylvania Rules of Judicial Administration, court prothonotaries and their employees are personnel of the unified judicial system [(UJS)]. [Pennsylvania Rule of Judicial Administration 102,] Pa.R.J.A. [] 102. *Frazier v. Phila. C[nty.] Off[.] of the Prothonotary*, 58 A.3d 858, 859 [(Pa. Cmwlth.] 2012[)]. Further, their records are deemed judicial records.[3]

---

[3] Although the underlying decisions in this matter refer to the records at issue as "judicial records," this term is not defined in the RTKL. *Grine v. County of Centre*, 138 A.3d 88, 97 (Pa. Cmwlth. 2016) (*en banc*). "For clarity[] and consistency with RTKL terminology, we recast this phrase as 'records of a judicial agency,'" *id.*, unless used in quoted material.

The fact that a county pays an employee's salary who works in a judicial office "does not affect his status as a judicial employee[.]"[] *County of Lehigh v. P[a.] Lab[.] Rels[.] B[d.]*, . . . 489 A.2d 1325, 1327 ([Pa.] 1985). The Open Records Office has routinely denied such appeals as they do not have jurisdiction to hear such matters. . . . .

Where the record may also be in the possession of [] County does not of itself make it an agency record. Records may document an activity of more than one agency. Where such dual records are also under the control of the judicial agency and the rules of judicial administration would not permit disclosure of such records, they may not be disclosed.

In this instance, the Courts have held that permitting the judicial branch to maintain control over the records which are also considered records of the judicial agency is appropriate. The Courts have even enjoined a county from "exercising control over records of the judiciary" related to open records requests. *C[t.] of Common Pleas of Lackawanna Cnty. v. Off[.] of Open Rec[s.]*, 2 A.3d 810 (Pa. Cmwlth. 2010) [(*Lackawanna County*)].

["]The location of the record or an agency's possession [of a record] does not guarantee that a record is accessible to the public; rather, the character of the record controls." *Grine v. County of Centre*, 138 A.3d 88[, 95 (Pa. Cmwlth. 2016) (*en banc*)].

The Courts have also held that "to preserve the separation of powers, a requester was unable to access records of activities of a judicial employee by seeking the records through a county." *See Lackawanna C[nty.]* case.

As a result, despite your threats to file an appeal and criticisms regarding a lack of transparency of this office, this office cannot consider such statements in responding to a request and is required to follow the law. As such, your request for these records is denied.

The proper appeal is the denial of your request from the 19th Judicial District. Such appeals follow [] Rule of Judicial Administration 509[,

6

Pa.R.J.A. 509].[4]   Please note that Rule 509 does not mirror the rules or definitions as outlined in the RTKL.

. . . .

(*Id.* at 64a-65a.)

## B. OOR Final Determination

Requester appealed County's denial to the OOR, which dismissed the appeal for lack of jurisdiction over the records at issue, because Prothonotary was a judicial agency.[5]  In its Final Determination, the OOR explained:

> The RTKL defines a "judicial agency" as "[a] court of the Commonwealth or any other entity or office of the [UJS]." [Section 102 of the RTKL,] 65 P.S. § 67.102.  The "[UJS]" is defined by the Judicial Code and the Pennsylvania Rules of Judicial Administration.  42 Pa.C.S. § 102; Pa.R.J.A. 102.  In particular, the term "system and related personnel" is defined to include the following:
>
>> Personnel of the system and related staff.  The term includes district attorneys, public defenders, sheriffs and other officers serving process or enforcing orders, registers of wills, prothonotaries, clerks of courts, clerks of the orphans' court division, coroners, jury

---

[4] Rule 509 governs access to financial records of the UJS.  Pa.R.J.A. 509.  Rule 509(c)(1) provides that requests are initially made to a records manager.  Pa.R.J.A. 509(c)(1).  If the request is denied by the records manager, an appeal may be filed with the president judge of that judicial district. *Id.*  Rule 509(a) sets forth the policy regarding financial records and defines such records, stating:

(a) General Policy. Financial records of the [UJS] are presumed to be open to any member of the public for inspection or copying during established business hours. The term "financial records" is defined as any account, contract, invoice or equivalent dealing with:  1) the receipt or disbursement of funds appropriated to the system; or 2) acquisition, use or disposal of services, supplies, materials, equipment or property secured through funds appropriated to the system.

Pa.R.J.A. 509(a).

[5] The OOR's Final Determination can be found in the Original Record for docket number 359 C.D. 2021 at Item No. 8 and in the Reproduced Record at pages 5a-13a.

commissioners, probation officials, and the related personnel of all of the foregoing.

> 42 Pa.C.S. § 102; Pa.R.J.A. 102. The Judicial Code distinguishes between "personnel of the system," defined as "[j]udicial officers, personal staff, administrative staff and central staff," and "related staff," which includes "[a]ll individuals employed at public expense who serve the unified judicial system" but "does not include personnel of the system." 42 Pa.C.S. § 102. . . . .

(R.R. at 8a (second, third, and sixth alteration added).) Distinguishing *Miller v. County of Centre*, 173 A.3d 1162 (Pa. 2017), which was cited by Requester, the OOR first explained:

> The term "administrative staff" is defined as:
>
>> All individuals employed in the business of a court, including the personnel of the office of the clerk of the court of common pleas, but the term does not include judicial officers or their personal staff. The term includes the clerks or prothonotaries of the Supreme Court, Superior Court and the Commonwealth Court and their staffs.
>
> [42 Pa.C.S. § 102.] . . . . Although prothonotaries of the courts of common pleas are not expressly identified in this definition, the Judicial Code defines "Office of the clerk of the court of common pleas" as follows:
>
>> A term employed in this title to refer generally to the administrative staff of the courts of common pleas and the Philadelphia Municipal Court responsible for the receipt of documents transmitted to the court by litigants and the transmission of notice of orders entered by and process issued under the authority of the court. The business of such staff shall be divided among the personnel of the offices of the prothonotary, the clerk of the courts and the clerk of the orphans' court division in the manner provided by or pursuant to Chapter 27 (relating to office of the clerk of the court of common pleas). Except as otherwise provided by statute, the term does not imply the

8

> unification of the administration, personnel or operations of any or all of such offices.

[42 Pa.C.S. § 102.]

(*Id.* at 9a-10a (second and third alteration added, emphasis omitted).)

The OOR reasoned that, although *Miller* held that district attorneys are not "judicial agencies" as defined by the RTKL, "prothonotaries, like clerks of the court of common pleas, are 'administrative staff' and, it follows . . . that prothonotaries are also 'personnel of the system,' as defined in the Judicial Code." (*Id.* at 8a-10a.) The OOR found support in *Smith v. Philadelphia Office of Judicial Records* (Pa. Cmwlth., No. 945 C.D. 2019, filed September 25, 2020), slip op. at 3-4,[6] in which this Court noted it had "consistently held that a court's filing office, such as a prothonotary's office, clerk of courts' office, or . . . the [Office of Judicial Records], are included within the RTKL's definition of 'judicial agency.'" (*Id.* at 10a (emphasis omitted).) The OOR held "[b]ecause county prothonotaries are 'administrative staff' and, as a result, fall within the definition of 'personnel of the [UJS],' they are considered judicial agencies under the RTKL." (*Id.* at 11a.) The OOR explained it lacks "jurisdiction over the records of a judicial agency, including those in the possession of an agency within the OOR's jurisdiction." (*Id.* at 12a.) However, the OOR also noted that, pursuant to the RTKL, judicial agencies must still disclose financial records, which includes salary information. (*Id.*)[7]

---

[6] Pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a), unreported panel decisions of this Court may be cited for their persuasive value.

[7] In a footnote, the OOR stated it

> recognizes that this holding puts [] Requester in an unusual position. The information being requested, salaries and basic job information for agency

**(Footnote continued on next page…)**

9

## C. Common Pleas' January Decision

Requester appealed the Final Determination to common pleas, arguing the requested records are County records, other counties routinely provide identical information to Requester, and Judicial Records Manager stated in his response Prothonotary employees are under the joint supervision of Prothonotary and County Commissioners. Requester, citing *Rosenwald v. Barbieri*, 462 A.2d 644 (Pa. 1983), also argued "[P]rothonotary employees are 'related staff' of the judiciary 'whose function aids the judicial process but who are not supervised by the courts.'" (R.R. at 146a.) County responded that, pursuant to the Rules of Judicial Administration and *Frazier*, court prothonotaries are part of the UJS, and, thus, part of the judiciary, precluding the OOR from having jurisdiction. County requested common pleas to consider the separation of powers doctrine under the Pennsylvania Constitution[8] as precluding a county or local agency from disclosing jointly held records of a judicial agency, the disclosure of which must be within the judicial agency's purview, citing *Grine*, 138 A.3d at 95.

After citing the relevant statutes and case law, common pleas affirmed the Final Determination and directed County to refer the Request to Judicial Records

---

employees, is clearly public. *See* [Section 708(b)(6)(ii) of the RTKL,] 65 P.S. § 67.708(b)(6)(ii); Pa.R.J.A. 509(a). [] Requester sought the information via Rule 509 . . . and was denied. [] Requester then sought the information via the RTKL and was denied. Here, based on the analysis above, [] Requester's appeal of the RTKL denial is being dismissed; however, that [] Requester should be provided the requested information is not in dispute. The question is merely who is responsible for providing it. Unfortunately, this Final Determination will not resolve that question.

(R.R. at 12a n.6.)

[8] Article V, section 10 of the Pennsylvania Constitution, PA. CONST. art. V, § 10 (outlining our Supreme Court's general supervisory authority over the UJS).

Manager.[9] In a thorough and well-written decision, common pleas explained "there was no avenue to access documents of the judiciary" until the Supreme Court adopted Rule 509, which "permitted Pennsylvanians access to financial records of the judiciary, [while] limiting release that would compromise personal information or security." (January Decision at 8-9.) Rule 509 also provided, common pleas explained, a procedure for accessing records "through a records manager and a permissive appeal to the president judge of the county court of common pleas." (*Id.*) Subsequently, the RTKL was enacted and provided for access to the financial records of judicial agencies. As to whether the responsive records fell under the purview of County as a local agency, or were records of a judicial agency that could be released if authorized by a judicial records manager as "a 'financial record' as narrowly defined by the RTKL," common pleas held "the records in question are judicial records and [] County has no jurisdictional authority to release them without direction to do so by the judiciary." (*Id.* at 14-15.)

Common pleas explained "prothonotaries and their employees are administrative staff of the [c]ourt" and "system personnel," and *Miller*, which involved a district attorney, was distinguishable. (*Id*. at 15-16.) Common pleas indicated that although *Miller* held district attorneys and their employees are not personnel of the judiciary, "extending [*Miller*'s] holding to cover all other members of the 'system and related personnel' of the UJS would be misplaced." (*Id*. at 16.) Unlike district attorneys, whose power and duties are laid out in the Pennsylvania Constitution as being part of the executive branch, common pleas stated "the office of the prothonotary was inextricably tied to the function of the Judiciary." (*Id.* at 17.)

---

[9] The January Decision can be found in the Original Record for docket number 359 C.D. 2021 at Item No. 2, and in the Reproduced Record at pages 140a-62a.

Turning to whether the responsive records were "of" a judicial agency or "of" a local agency, common pleas examined Section 1620 of The County Code, 16 P.S. § 1620,[10] which explicitly states county commissioners are to "represent the judges of the court of common pleas" in salary and compensation negotiations and "sit on behalf of judges" in such negotiations, which will not impair the hiring, discharge, and supervision of employees. (*Id.* at 17-18.) Common pleas held "[a] record does not need to be generated by the agency receiving a RTKL request to qualify as 'of' that agency," and it was the subject matter, rather than the location of where it was stored, that mattered in the inquiry. (*Id.* at 19 (citing *Bagwell v. Dep't of Educ.*, 76 A.3d 81 (Pa. Cmwlth. 2013).)) "Given this context," common pleas concluded "it becomes apparent that the wage and salary records requested are judicial records under the control and supervision of the judiciary," and the requested records were "of" the judicial agency, not County. (*Id.*)

Regarding the identified separation of powers concerns, common pleas noted the Prior Request had been made to the judiciary and responded to by Judicial

---

[10] Act of August 9, 1955, P.L. 323, *as amended*, 16 P.S. § 1620. Section 1620 provides:

The salaries and compensation of county officers shall be as now or hereafter fixed by law. The salaries and compensation of all appointed officers and employes who are paid from the county treasury shall be fixed by the salary board created by this act for such purposes: Provided, however, That with respect to representation proceedings before the Pennsylvania Labor Relations Board or collective bargaining negotiations involving any or all employes paid from the county treasury, the board of county commissioners shall have the sole power and responsibility to represent judges of the court of common pleas, the county and all elected or appointed county officers having any employment powers over the affected employes. The exercise of such responsibilities by the county commissioners shall in no way affect the hiring, discharging and supervising rights and obligations with respect to such employes as may be vested in the judges or other county officers.

*Id.*

12

Records Manager, whereas the Request before it was addressed to County and answered by its open records officer. (*Id*. at 20.) Common pleas noted this was significant because before the court was "an appeal from a decision rendered by the OOR after a request was made to a local agency, County, to produce its records. Critically, it is not an appeal from a decision rendered by the [Judicial] Records Manager of a judicial agency," which would have involved different underlying procedures for requests, disclosure, and appeals. (*Id*. at 22.) As such, common pleas confined its analysis to the issue expressly before it, the appeal from the OOR's determination, and declined to consider whether the requested documents were disclosable financial records under Rule 509.

Ultimately, common pleas held that because the requested records were "of" both a judicial agency, Prothonotary, and a local agency, County, the local agency had to defer to the judicial agency's disclosure decision. (*Id.* at 22-23.) Accordingly, common pleas denied the appeal and affirmed the OOR's Final Determination. In addition, common pleas directed County to refer the Request to Judicial Records Manager "for review and determination whether the documents requested should be released consistent with this opinion." (*Id.* at 1.)

Requester appealed and filed, as directed, a Concise Statement of Errors Complained of on Appeal (Concise Statement) pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), Pa.R.A.P. 1925(b). Therein, Requester relevantly argued:

> 2. The [c]ourt erred in concluding that the wage and salary records requested are judicial records under the control and supervision of the judiciary. . . .
>
> 3. The [c]ourt erred in referring the case to [] Judicial Records Manager for review and determination whether the documents requested should be released consistent with this opinion. . . .

13

4. The [c]ourt erred in failing to adequately discern whether the records qualify as records 'of' a particular agency by conducting a thorough review of the subject matter of the records sought. . . . The [c]ourt engaged in an inadequate analysis to determine which office was primarily responsible for hiring, paying and supervising [P]rothonotary employees. By contrast, the [c]ourt should have used the more in-depth approach that was used in *Philadelphia Dist[rict] Attorney's Off[ice] v. Stover*, 176 A.3d 1024 (Pa. Cmwlth. 2017)[,] to determine whether the salary records sought were the primary responsibility of the Prothonotary or the court system.

(Concise Statement ¶¶ 2, 4 (internal quotation marks omitted).[11])

In its Rule 1925(a) Memorandum Opinion (1925(a) Opinion),[12] common pleas stated the January Decision sufficiently explained its rulings, but separately addressed the errors complained of in the Concise Statement. Common pleas responded to the second alleged error, explaining:

If [] Prothonotary and [its] employees are 'related staff' then the natural conclusion is that their financial records are county records and free to be released. However, since we have concluded that [] Prothonotary and its staff fall outside the term 'related staff' as defined in [] *Miller*, then it naturally follows that the financial records associated with them are at least simultaneously records of the judiciary and [C]ounty records, if not solely records of the judiciary. Given this conclusion, despite the fact that the financial records are held by County, the character of the records suggest that they are records of the judiciary and therefore can only be released with approval of the judiciary.

(1925(a) Op. at 6-7.)

With regard to the third alleged error, common pleas explained Requester cited no authority as to why it erred and "[t]his portion of the Order was meant to

---

[11] The Concise Statement can be found in the Original Record for 359 C.D. 2021 at Item No. 3.

[12] The 1925(a) Opinion can be found in the Original Record for 359 C.D. 2021 at Item No. 4.

14

expedite the matter as neither the OOR nor this [c]ourt hold[s] the belief that [Requester is] not entitled to the financial records sought, merely that [Requester] followed the wrong track in attempting to gain access to the records." (*Id*. at 7.) Notably, common pleas stated "the [c]ourt maintains that [Requester is] entitled to, at minimum, the financial records they seek with redacted private information but[,] due to the procedural posture of this proceeding, it would be inappropriate for us to grant [Requester's] requested relief." (*Id*. at 9.) Rather, common pleas explained, this decision had to be made on "the judiciary track," which is why the court "direct[ed] that the matter be submitted to [] [J]udicial [R]ecords [M]anager of the judiciary for proper determination of entitlement." (*Id.*)

Finally, as to the fourth alleged error, common pleas explained it did engage in a comprehensive and thorough analysis. It looked at the character of the documents, including name, salary records, location of the documents, source of funding, "character of the function that [] Prothonotary provides, and many other factors," to reach its conclusions. (*Id*. at 10.)

### D. Judicial Records Manager's Review and March Decision

In accordance with common pleas' January Decision, the Request was submitted to Judicial Records Manager for review under the RTKL and Rule 509. On February 8, 2021, Judicial Records Manager issued a determination. Therein, Judicial Records Manager stated:

> [Requester] is requesting information that is contained, presumably, in the personnel files of these employees and other records maintained by [][C]ounty's human resources department. Because these records are not in the court's possession, control or supervision, but rather are in the possession, control and supervision of [][C]ounty, I will treat this as a request for the court to *authorize* [] [C]*ounty* to release the information in its possession. I have not been presented with any

15

authority for the proposition that I can cause or compel [][C]ounty to actually release or withhold the information.

. . . .

The names, salaries, and job titles of employees of [][P]rothonotary are within the scope of the RTKL as it pertains to the judiciary, at least under the statute's definition of a financial record, so I authorize [] [C]ounty to release that information to [Requester]. The length of service, including start and end dates of employment, exceeds the scope of the RTKL as it pertains to the judiciary, so I do not authorize [][C]ounty to release that information to her.

(R.R. at 166a.) In accordance with Judicial Records Manager's decision, Requester was given a spreadsheet reflecting Prothonotary employees' first and last names, hourly rates, annual salaries, and full titles. (*Id.* at 176a.) However, the employees' hiring dates and termination dates were redacted. (*Id.*)

Requester appealed this "Rule 509 determination" to President Judge, asserting the redaction of the length of service information was not consistent with Section 708(b)(6) of the RTKL, which made this information public. (*Id.* at 168a.) On March 17, 2021,[13] President Judge confirmed the determination of Judicial Records Manager and denied Requester's appeal. President Judge agreed with the January Decision's conclusion that the records sought were those "of" a judicial agency for the reasons offered in the January Decision. President Judge held the plain language of Sections 102 and 304 of the RTKL, 65 P.S. §§ 67.102, 304, did not include an employee's length of service in the definition of financial record. (March Decision at 2-3.) In addition, Requester's reliance on Section 708(b)(6) of the RTKL as requiring disclosure was misplaced because Section 708, entitled "Exceptions to public records," did not apply to records of a judicial agency, which

---

[13] The March Decision can be found in the Original Record for 360 C.D. 2021, Item No. 2 and in the Reproduced Record at 202a-05a.

16

are not "public records" as defined by the RTKL. 65 P.S. § 67.102 ("A record, including a financial record, of *a Commonwealth or local agency* that: (1) is not exempt under [S]ection 708."). (*Id.* at 204a (emphasis in original).) Requester appealed, and Requester's two appeals were consolidated for review by this Court.[14]

## II.    DISCUSSION

Requester raises three arguments on appeal. First, county prothonotaries are not "judicial agencies" but are "local agencies," which renders the full RTKL applicable to the requested records. Second, common pleas erred in failing to consider the nature of the records which would show the records themselves were not "of" the judiciary, but instead evince a transaction of County - paying prothonotary employees as County employees. And, third, common pleas erred in transferring the Request to Judicial Records Manager, and President Judge erred in affirming the redaction of the length of service of Prothonotary employees from the responsive records, which should be disclosable under the RTKL and/or Rule 509.[15]

County responds there was no error in common pleas affirming the OOR's Final Determination in the January Decision, because both correctly held

---

[14] "Our standard of review in a [RTKL] case is whether an error of law was committed, constitutional rights were violated, or necessary findings of fact are supported by substantial evidence. Our scope of review is plenary." *Silver v. Borough of Wilkinsburg*, 58 A.3d 125, 127 n.2 (Pa. Cmwlth. 2012).

[15] The Pennsylvania Newsmedia Association (PNA) filed an amicus curiae brief in support of Requester's position. PNA adopts Requester's argument that length of service records are records of the county, rather than of the judiciary. PNA maintains the responsive records are subject to disclosure pursuant to Section 708(b)(6)(ii), which expressly directs disclosure of "length of service of a public official or an agency employee." 65 P.S. § 67.708(b)(6)(ii), as well as Sections 102 and 304, and *City of Harrisburg*, 219 A.3d 602. Alternatively, if the Court finds the records to be records of a "judicial agency" subject to the requirements of Rule 509, PNA argues the length of service records must still be disclosed because they constitute "financial records" under that rule. (PNA's Br. at 4.)

17

Prothonotary is a judicial agency and its employees are personnel of the judicial system notwithstanding their being paid by County, the responsive records are of a judicial agency, and County does not have authority to release those records without being directed by a judicial agency. County further responds, President Judge correctly concluded in the March Decision the length of service information was not a disclosable financial record under the RTKL, and, as a result, the redaction of this information was not in error.

### A. The RTKL

Preliminarily, we recognize the RTKL was implemented as "remedial legislation to facilitate government transparency and promote accountability," and is "construed to maximize access to public records" in an agency's possession. *McKelvey v. Pa. Dep't of Health*, 255 A.3d 399, 400 (Pa. 2021). The RTKL was also implemented "[t]o 'prohibit secrets, scrutinize the actions of public officials, and make public officials accountable for their actions,' [and] the RTKL places the statutory duty of disclosing public records 'solely on the government agency.'" *Energy Transfer v. Friedman*, 265 A.3d 421, 428-29 (Pa. 2021) (quoting *McKelvey*, 255 A.3d at 400). The RTKL mandates a Commonwealth agency or a local agency to "provide public records in accordance with the" RTKL without regard to a requester's "intended use of the public record . . . unless otherwise provided by law." Sections 301 and 302 of the RTKL, 65 P.S. §§ 67.301, 67.302. The RTKL defines "public record" as a record of a Commonwealth agency or local agency that "is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree." Section 102 of the RTKL, 65 P.S. § 67.102. A record in

the possession of a Commonwealth agency or local agency "shall be presumed to be a public record." Section 305(a) of the RTKL, 65 P.S. § 67.305(a).

However, the RTKL treats the records of judicial agencies differently, and only "a financial record in the possession of a judicial agency shall be presumed to be available in accordance with this act." 65 P.S. § 67.305(b). Sections 304 and 305 of the RTKL set forth that, unlike other agencies, the presumption of the public nature of a record for judicial agencies does not arise until after the judicial agency reviews the record and decides whether it is a "financial record." 65 P.S. §§ 67.304, 67.305. The RTKL defines "financial record," in relevant part, as follows:

(1) Any account, voucher or contract dealing with:

(i) the receipt or disbursement of funds by an agency; or

(ii) an agency's acquisition, use or disposal of services, supplies, materials, equipment or property.

(2) The salary or other payments or expenses paid to an officer or employee of an agency, including the name and title of the officer or employee.

65 P.S. § 67.102.

Because the RTKL distinguishes between judicial agencies and other government agencies, we first examine whether Prothonotary is a judicial agency as that determines what, if any, records are subject to disclosure.

*B. Whether Prothonotary is a judicial agency and its employees are personnel of the judicial system*

1. Parties' Arguments

Requester argues common pleas applied an overly narrow interpretation of the RTKL, and prothonotaries are local agencies for purposes of the RTKL. Requester

19

acknowledges "the majority of the records maintained in a prothonotar[y's] office are judicial records. . . . [H]owever, prothonotaries do not produce or create those judicial records; those judicial records are created in legal proceedings by attorneys, litigants, and judges. The prothonotary's office simply maintains them." (Requester's Brief (Br.) at 16.) Relying on *Miller*, Requester argues prothonotaries are similar to district attorneys' offices and are "related staff," which "covers those whose function aids the judicial process but who are not supervised by the courts." (*Id.* at 19 (quoting *Miller* 173 A.3d at 238-39).) Moreover, Requester cites article IX, section 4 of the Pennsylvania Constitution,[16] which references prothonotaries and district attorneys together as county officers, to argue the two offices should be treated the same and common pleas erred in distinguishing *Miller*. (*Id.* at 19-20.)

Citing *Frazier*, County contends prothonotaries, like clerks of court, are judicial agencies and that *Miller* is distinguishable because it involved a district attorney and its staff, not a prothonotary, whose work and activities are considered functions of a court system. (County's Br. at 8.) County stresses prothonotaries and their personnel are "personnel of the system," and, therefore, part of a "judicial agency" for purposes of the RTKL. County argues the mere fact it pays the salary of Prothonotary employees does not transform Prothonotary from a judicial agency into a local one, citing *County of Lehigh*, 489 A.2d at 1327.

---

[16] Article IX, section 4 of the Pennsylvania Constitution states, in relevant part: "County officers shall consist of commissioners, controllers or auditors, district attorneys, public defenders, treasurers, sheriffs, register of wills, recorders of deeds, prothonotaries, clerks of courts, and such others as may from time to time be provided by law." PA. CONST. art. IX, § 4.

20

2. <u>Analysis</u>

To determine whether Prothonotary is a "judicial agency," the Court must interpret the RTKL. The Statutory Construction Act of 1972 (SCA), 1 Pa.C.S. §§ 1501-1991, emphasizes the objective of our interpretation is to ascertain and effectuate the General Assembly's intent. Section 1921(a) of the SCA, 1 Pa.C.S. § 1921(a). A statute's plain language generally provides the best indication of legislative intent. 1 Pa.C.S. § 1921(b). "However, if the words of the statute are not free from ambiguity, the intention of the General Assembly may be ascertained by considering, *inter alia*, the occasion and necessity for the statute, the object or policy goals to be obtained, and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c)." *Miller*, 173 A.3d at 1168.

Section 102 of the RTKL defines "judicial agency" as "[a] court of the Commonwealth **or any other entity or office of the** [UJS]." 65 P.S. § 67.102 (emphasis added). The UJS is defined by the Rules of Judicial Administration and by the Judicial Code. *Miller*, 173 A.3d at 1169. The term "personnel of the system" includes "[j]udicial officers, personal staff, administrative staff and central staff." Section 102 of the Judicial Code, 42 Pa.C.S. § 102; *see* Rule 102 of the Pennsylvania Rules of Judicial Administration, Pa.R.J.A. 102. "Administrative staff" is defined as "[a]ll individuals employed in the business of a court, including the personnel of the office of the clerk of the court of common pleas, but the term does not include judicial officers or their personal staff." 42 Pa.C.S. § 102. The definition also states: "The term includes the clerks or prothonotaries of the Supreme Court, the Superior Court, and the Commonwealth Court and their staffs." *Id.* "System and related personnel" includes "district attorneys, public defenders, sheriffs and other officers serving process or enforcing orders, registers of wills, **prothonotaries**, clerks of the

21

courts, clerks of the orphans' court division, coroners, jury commissioners, probation officials, and the personnel of all of the foregoing."  42 Pa.C.S. § 102 (emphasis added); *see also* Pa.R.J.A. 102.  "**Related staff**," by contrast, includes "[a]ll individuals employed at public expense who serve the [UJS], but **the term does not include personnel of the system**."  42 Pa.C.S. § 102 (emphasis added).  "These definitions[] clearly distinguish between 'personnel of the system' and 'related staff.'"  *Rosenwald*, 462 A.2d at 647.

Consistent with identifying prothonotaries as "personnel of the system," subchapter B of Chapter 27 of the Judicial Code, 42 Pa.C.S. §§ 2731-2738, entitled "Prothonotaries," addresses, among other items, the powers and duties of a prothonotary and the staffing of the office of prothonotary.  While a prothonotary is an elected county office, the powers and duties of a prothonotary relate to the business of the court, including administering oaths, entering civil judgments, using the county court's seal, and "[e]xercis[ing] the authority of the prothonotary as an officer of the court."  Section 2737(5) of the Judicial Code, 42 Pa.C.S. § 2737(5).  As to a prothonotary's staff, who are also considered "personnel of the system," "[t]he prothonotary may appoint and remove such deputies and other administrative staff of the office of the prothonotary as may be necessary."  Section 2735(a) of the Judicial Code, 42 Pa.C.S. § 2735(a).  Further, a prothonotary has the authority to fix the compensation and duties of the prothonotary office's staff, unless otherwise provided by statute, home rule charter, or optional plan, and, if the compensation is set by a county salary board, the prothonotary must be a member of that board for the purpose.  42 Pa.C.S. § 2735(c).

This Court has held, in the context of a request submitted to the Philadelphia County Office of Prothonotary for an autopsy report, that court prothonotaries are

personnel of the UJS. *Frazier*, 58 A.3d at 859. "We have consistently held that a court's filing office, **such as a prothonotary's office**, clerk of courts' office, or, . . . the [Office of Judicial Records], are included within the RTKL's definition of 'judicial agency.'" *Smith*, slip op. at 10 (emphasis added). *See also League of Women Voters of Greater Pittsburgh v. Allegheny Cnty.*, 819 A.2d 155, 158 n.12 (Pa. Cmwlth. 2003) (holding "clerks of court **and prothonotaries** are personnel of the [UJS]") (emphasis added). As the precedent makes clear, prothonotaries, like clerks of court, are personnel of the UJS. Although Requester urges us to consider a prothonotary's office a "local agency" in one context and a "judicial agency" in another, such interpretation is inconsistent with the statutory language, rules, and precedent, which make prothonotary employees UJS personnel subject to the hiring, firing, and supervision of the prothonotary, a judicial agency.

We disagree with Requester's position that prothonotaries are akin to district attorneys, which would make them "related staff," not a judicial agency, under *Miller*. In *Miller*, our Supreme Court held district attorneys, while identified as "system and related personnel," constituted "related staff" and not "judicial agencies." 173 A.3d at 1169. The Supreme Court explained:

> Because district attorneys are "system and related personnel," but are not "personnel of the [UJS]," it follows that they are "related staff." "Related staff" expressly are not "personnel of the system." *A fortiori*, such staff cannot be personnel or entities or offices of the [UJS]. Rather, "related staff" are "those whose function aids the judicial process but who are not supervised by the courts." [] Under the plain language of the RTKL, the Judicial Code, and the Rules of Judicial Administration, district attorneys (like public defenders, sheriffs, and others identified as "system and related personnel") are not "judicial agencies." Accordingly, [the district attorney] cannot invoke the protections for judicial agencies provided by the RTKL.

*Id.*

23

As stated in the January Decision, "[c]omparing the office of the prothonotary, which aids the court in its essential daily functions, and the office of the district attorney, an entity that serves the executive branch and acts as the chief enforcer of the [C]ommonwealth, would be improper." (January Decision at 17.) We agree with this assessment, as it is based upon the particular powers and duties of the office of prothonotary, which serve the courts of common pleas as set forth in the Judicial Code, 42 Pa.C.S. § 2737. Under those principles, Prothonotary is a judicial agency. However, this conclusion does not end our inquiry because Requester challenges common pleas' determination that the requested records were "of" the judicial agency, Prothonotary, rather than "of" a local agency, County. We turn to this issue next.

### C. Whether common pleas erred in concluding the requested records are "of" a judicial agency

#### 1. Parties' Arguments

Requester argues that, if Prothonotary is a judicial agency, the Request, which sought basic salary information "**about** a prothonotary's office" was submitted to County, and "did not seek records created by or in the possession of [] [P]rothonotary." (Requester's Br. at 21 (emphasis in original).) As a result, Requester contends the requested records are not records "of" the judiciary. (*Id.* at 22.) Requester asserts *Lackawanna County* and *Grine* establish that whether a record is "of" a particular agency depends on whether the record "'documents' a 'transaction or activity of the agency.'" (Requester's Br. at 22 (quoting *Grine*, 138 A.3d at 94-95).) Applying this standard, Requester asserts, leads to the conclusion the requested records are "of" County, not because County has possession and control of the records, but because the character of the records, information

24

regarding employment, make them records "of" County. Requester distinguishes the records requested here from those created and maintained as part of a legal proceeding by a prothonotary's office for judicial purposes and for the benefit of the judiciary, such as a court order, *Smith*, slip op. at 10; docket entries in a criminal court docket, *Nixon v. Philadelphia County Clerk of Courts* (Pa. Cmwlth., No. 706 C.D. 2016, filed November 14, 2017), slip op. at 3; certified sentencing orders, *Faulk v. Philadelphia Clerk of Courts*, 116 A.3d 1183, 1185 (Pa. Cmwlth. 2015); or an autopsy report, *Frazier*, 58 A.3d at 859-60. (Requester's Br. at 22.) In contrast to these records, Requester posits a "County payroll record is a record of County, regardless of the jobs of the employees reflected in that [] record, or where it is kept," and, therefore, are subject to the RTKL and the OOR's jurisdiction. (*Id.* at 23.)

County replies that records may document the activity of more than one agency and where such "dual records" are "of" a judicial agency and "of" a local agency, their disclosure is determined by the judicial agency. County agrees it is the character of the record, not which agency created the records or holds the records, that controls their disclosure to the public. (County's Br. at 11 (citing *Grine*, 138 A.3d at 95; *Bagwell*, 76 A.3d 81).) County asserts, however, the fact it pays Prothonotary's employees does not make the records related to those payments records solely of a local agency. County argues the responsive records were created on behalf of employees of Prothonotary, a judicial agency, and reflected the activity of Prothonotary, similar to the records requested from the counties in *Grine* and those which *Lackawanna County* found to be records of a judicial agency and not disclosable by the county without judicial agency approval. To hold otherwise, County asserts, would violate the separation of powers doctrine by allowing an executive agency to disclose records reflecting the activity of the judicial branch

25

which could interfere with a judicial agency's supervision of its employees. (County's Br. at 12.) County argues the process involved in a judicial agency's consideration of whether its records are disclosable differs from the process of a local agency's consideration of whether its records are disclosable, with each having its own presumptions, burdens, and appeals procedures. These differences, County asserts, may result in substantively different responses to the same request, and Requester cannot avoid the limitations associated with the records of a judicial agency by making a request to County and claiming the records are of the local agency. (*Id*. at 15.)

2. Analysis

The OOR is "*per se* vested with jurisdiction to" determine, initially, if it has subject matter jurisdiction. *Stover*, 176 A.3d at 1027. While the OOR has subject matter jurisdiction to hear appeals from state and local agencies, it does not have jurisdiction to review appeals from determinations of a judicial agency. *Id.* The OOR also does not have subject matter jurisdiction to review the records of a judicial agency to determine if they are disclosable under the RTKL. *See Grine*, 138 A.3d at 99 (stating the "OOR lacks jurisdiction over appeals involving records of a judicial agency" (citation omitted)); *Lackawanna County*, 2 A.3d at 813-14 (stating records of a judicial agency are "not subject to the jurisdiction of the OOR" and the OOR's attempt to expand that jurisdiction in a RTKL appeal to order disclosure of such records violated the separation of powers doctrine). Here, the OOR reviewed Requester's appeal from County's denial, agreed the records requested were those of a judicial agency, and disclaimed having subject matter jurisdiction over those

26

records, "including those in the possession of an agency within the OOR's jurisdiction." (R.R. at 12a.)

Both parties agree it is the character of the record that controls whether the record is "of" the judiciary or "of" a local agency, which will then govern the standard used to determine if the record is disclosable and which entity, the OOR or a court of common pleas, has subject matter jurisdiction over any related appeal. In making this determination, courts examine whether the record is produced by the agency, reflects an activity or operation of the agency, or documents the transactions of the agency. If the subject matter of a requested record reflects the agency's operations, it is "of" that agency.

In *Lackawanna County*, two substantially identical requests were made to Lackawanna County seeking "inappropriate e[]mails from or to any e[]mail accounts used by" the director of the county's Office of Domestic Relations relating to the director's suspension. 2 A.3d at 812. Lackawanna County denied the request, and the requester appealed to the OOR. During the pendency of the appeal, the district court administrator for the Lackawanna County Court of Common Pleas submitted an affidavit and letter to the OOR "stating that [the director]'s e[]mails were records of the judiciary, and that the RTKL was not applicable to the judiciary." *Id*. The OOR granted the requester's appeal and ordered Lackawanna County to release the records. In doing so, the OOR reasoned the director was a judicial employee even though he was paid by Lackawanna County because he was supervised by the judiciary, but his emails were Lackawanna County records because the County "had access to them and control over them as it provided the court with its computer system on which they were located." *Id*. Thus, the OOR found the emails were local agency records and public pursuant to the RTKL. *Id*.

27

The Lackawanna County Court of Common Pleas, through the Administrative Office of Pennsylvania Courts (AOPC), appealed to this Court arguing the director was a court-supervised employee, and the fact that the director's salary was paid by Lackawanna County was of no moment. *Id*. at 813. Therefore, AOPC asserted his emails were records of a judicial agency not subject to disclosure pursuant to the RTKL, and the OOR had no jurisdiction to order the emails to be released. It also argued the separation of powers doctrine was violated because the OOR "has no jurisdiction over court documents and [their disclosure] vitiates the general supervisory authority of the Supreme Court of Pennsylvania over all courts and personnel in the [UJS]." *Id*.

> This Court agreed with both arguments, explaining:

> As there is no allegation that the records at issue here are financial records, and as it is axiomatic that any record produced by a judicial employee is a record of a judicial agency, we need only consider whether [the director] was a judicial employee in order to decide this case.

*Id*. This Court concluded the director was an employee of the Lackawanna County Court of Common Pleas because Section 961 of the Judicial Code, 42 Pa.C.S. § 961, requires every court of common pleas to have a domestic relations section, and the director's position made him "an administrative staff employee of the [UJS]." *Lackawanna Cnty.*, 2 A.3d at 813. Thus, any records he produced were "of" a judicial agency and not subject to the jurisdiction of the OOR. *Id*. The fact the director was paid by Lackawanna County "d[id] not affect his status as a judicial employee." *Id*. (citing *County of Lehigh*, 489 A.2d at 1327). Regarding Lackawanna County's storage of the records, the Court reasoned:

28

> Just because the [c]ounty provides logistic support to the courts does not mean that every record stored on what Lackawanna County provides as part of its function to support the court makes it a [c]ounty record—those records always remain the records of the court. Otherwise, every record ever generated by a [c]ounty court, including the draft opinions and law clerk memorandums, would be accessible through the RTKL simply by submitting the request to the [c]ounty instead, an absurd result that would make Section 304 of the RTKL meaningless. *See* 1 Pa.C.S. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions."), and 1 Pa.C.S. § 1922(1) ("[T]he General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.").

*Lackawanna County*, 2 A.3d at 813 (emphasis added). The Court concluded the OOR's order, in addition to violating the RTKL, "constituted a blatant and unconstitutional violation of the separation of powers doctrine." *Id*. at 814. Moreover, the Court observed:

> **Among the judiciary's powers is the ability to supervise its own personnel without interference from another branch of government**. *See First Judicial Dist*[*. of Pa. v. Pa. Hum. Rels. Comm'n,*] 727 A.2d[, 1110,] 1112[ (Pa. 1999)]; *Cnty. of Lehigh*, . . . 489 A.2d at 1327; *L.J.S* [*v. State Ethics Comm'n,*] 744 [A.2d 798,] 801 [(Pa. Cmwlth. 2000)]. An inescapable corollary to this power is that no administrative agency may exercise control over the records generated by personnel of a judicial agency.

*Id.* (emphasis added).

Similarly, cell phone records were found to be records of the judiciary in *Grine* notwithstanding that the cell phone bills were paid by the county. There, Centre County responded to a RTKL request asking for cell phone records of a common pleas judge, a magisterial district judge, and a district attorney (DA). Because Centre County paid the cell phone bills for the judges pursuant to a contract with Verizon (but not the DA who used her personal cell phone), and Centre County had access to the cell phone records, the request was given to the Centre County

29

open records officer. Centre County released parts of the judges' telephone numbers and crafted a spreadsheet tracking cell phone usage between the judges and DA, although the response did not provide the contents of the communications, nor the cost of cell phone services.

The judges requested the trial court enter a preliminary injunction to enjoin the release of the records, which was granted. The court found the records were "relat[ed] to **activities of the Judges** [which] pertain to a judicial agency." *Id*. at 92 (emphasis added). Regarding the separation of powers argument, the trial court held Centre County lacked jurisdiction to release the cell phone records, enjoined Centre County from responding to requests submitted under the RTKL for "judicial records," and directed Centre County to refer requests for "judicial records" to the judicial agency. *Id*.

Centre County appealed to this Court, arguing the cell phone records were public financial records, while the judges asserted the cell phone records reflected UJS personnel communications, they were not records "of" Centre County, and their disclosure would violate the separation of powers doctrine. This Court noted the dispute

> underscores the dilemma agencies face when a RTKL request seeks records that document an activity of more than one agency. The [cell phone r]ecords document the [c]ounty's payment for services as well as the [j]udges['] use of services. The [j]udges do not dispute that financial records of a judicial agency are public.[] Their concern lies with maintaining control over records of a judicial agency when they are in another branch's possession.

*Grine*, 138 A.3d at 93. As to the RTKL, Rule 509, and financial records of a judicial agency, we noted:

30

At the outset, we emphasize that access to financial records of the [UJS] is governed by Rule 509 . . . . The parties here do not ask us to distinguish between the provisions of that Rule and the very similar provisions of the RTKL which on their face refer to judicial agencies. We decline to embark on that journey uninvited. Similarly, we decline to explore on our own motion the interplay between the Rule and the RTKL statute. Instead, we will confine our analysis to the arguments raised by the parties, which refer almost exclusively to the RTKL.

*Id*. at 93 n.4. We held that, under the RTKL, "a record qualifies as 'of' an agency when the record 'documents a **transaction or activity of the agency**[,]'" and "'[d]ocuments' means 'proves, supports [or] evidences.'" *Id*. at 94 (emphasis added) (quoting *Allegheny Cnty. Dep't of Admin. Servs. v. A Second Chance, Inc. (ASCI)*, 13 A.3d 1025, 1034-35 (Pa. Cmwlth. 2011) (*en banc*) (fourth alteration in original).) We explained:

In discerning whether records qualify as records "of" a particular agency, we consider the subject[ ]matter of the records. *Meguerian* [*v. Off*[.] *of Att*[']*y. Gen.*, 86 A.3d 924 (Pa. Cmwlth. 2013);] *see also Off*[.] *of Att*[']*y. Gen. v. Phila. Inquirer*, 127 A.3d 57, 63 (Pa. Cmwlth. 2015) ("For emails to qualify as records [']of['] an agency, we only look to see if the subject[ ]matter of the records relate[s] to the agency's operations."). The location of the record or an agency's possession does not guarantee that a record is accessible to the public; rather, the character of the record controls. *Easton Area Sch. Dist. v. Baxter*, 35 A.3d 1259 (Pa. Cmwlth. 2012). A record does not need to be generated by the agency receiving a RTKL request to qualify as "of" that agency.

*Grine*, 138 A.3d at 95. Although the cases relied upon by Centre County in *Grine* indicated records of an agency's cell phone services were financial records reflecting the disbursement of agency funds, the records in the cited cases "did not reveal **activities** of the judiciary," as the records sought in *Grine* had. *Id.* at 96. Because the records at issue in *Grine* reflected the activities of the judicial agency, the judges,

31

and the DA, they were not a record "solely of [the c]ounty." *Id*. at 96 (emphasis added).

As to the separation of powers doctrine, we reasoned:

> The **dual status** of the records as documenting activities of the [c]ounty and of the judicial agency **is central** to this dispute. The RTKL affords different levels of access to *any* non-exempt records of a local agency, such as [a c]ounty, but it allows access *only* to financial records of a judicial agency.

*Id.* at 97 (bold emphasis added).[17]  We explained:

> To preserve the separation of powers, a requester [i]s unable to access records of activities of a judicial employee by seeking the records through a county. [*Lackawanna Cnty*., 2 A.3d at 813.]  Allowing another agency to direct a judicial employee violated the separation of powers because it interfered with the judiciary's oversight and supervision of judicial employees. The trial court applied the same rationale here.
>
> The trial court here reasoned that records relating to activities of the [j]udges pertained to members of the [UJS]. Such activities are under the exclusive oversight of our Supreme Court. Following *Lackawanna County* [], the trial court concluded records documenting the [j]udges' use of cell phone services were not accessible through [the c]ounty. In so doing, the trial court did not err or abuse its discretion.
>
> [The c]ounty attempts to distinguish *Lackawanna County* [] because that case involved the content of communications of a judicial employee, and content is not at issue here. However, our holding that records of a judicial employee are records of a judicial agency, and so beyond [the] OOR's jurisdiction, did not depend on the content of the

---

[17] In *Schneller v. Philadelphia District Attorney* (Pa. Cmwlth., No. 1313 C.D. 2016, filed August 3, 2017), slip op. at 2-3 (emphasis added), "we reject[ed the r]equester's premise that 'judicial records' are accessible under the RTKL. . . .  Indeed, **the RTKL contains no such term**. *See* Section 102 of the RTKL."  Moreover, the requester did not "explain the records evidence an activity 'of' a judicial agency so as to have dual character as a local agency **record** and a **judicial** agency **record**. *Grine*." *Id*. (emphasis in original).

records. **Our rationale was based on the need for the judiciary to retain supervisory control over its personnel**.

*Id.* at 97-98 (emphasis added, footnotes omitted).

In sum, the *Grine* Court reasoned "the [j]udges [had] established a clear right to relief to ensure **the judiciary retains control over records showing the activities of [UJS] personnel**," even if the records were simultaneously held by a county. *Id*. at 100 (emphasis added). This Court ultimately affirmed the grant of injunctive relief against Centre County, while noting Centre "County remain[ed] free to disclose financial records of [the c]ounty that [were] not also records showing **activities of a judicial agency**, and thus comply with the RTKL." *Id*. at 101 (emphasis added).

In *Stover*, this Court reiterated the need to review the character and subject matter of a requested record, rather than which office possessed the record, when it was tasked with determining whether orders of conviction and sentencing, and a commitment form, were records "of" a district attorney's office (a local agency) or "of" the court of common pleas (a judicial agency). 176 A.3d at 1028. This Court held:

> The fact that the [d]istrict [a]ttorney may possess – or readily obtain – a copy of the sentencing order in no way transforms the record of a judicial agency into a record of a local agency.
>
> . . . .
>
> Moreover, if a court's sentencing order is a record of a judicial agency, then so must be a court's order memorializing a defendant's conviction and/or judgment. In both instances, **the character and subject matter of the requested records evidence the duty and power of the court while acting as a judicial agency**, and the orders document activities that are solely and uniquely vested in and committed to the judicial branch of government.

33

. . . .

> Regarding the requested [c]ommitment [f]orm, our General Assembly has directed the court of common pleas to create and issue these forms **as part of its judicial functions** in sentencing a defendant to a particular place of confinement. . . . Consequently, this requested record, too, is one "of" a judicial agency.

*Id.* at 1029 (emphasis added). Thus, if the record evinces the duty and power of a judicial agency as part of the agency's functions and documents the activities of a judicial agency, *Stover*, 176 A.3d at 1029, it is a record "of" the judicial agency.

Here, as stated in *Grine*, and consistent with *Lackawanna County* and *Stover*, "we [must] evaluate whether a record documents **an agency's activity or operations**." *Grine*, 138 A.3d at 95 (emphasis added). Prothonotary employees, like the employee at issue in *Lackawanna County*, are paid by County; however, this "does not affect [their] status as [] judicial employee[s]." 2 A.3d at 813. The records at issue in *Lackawanna County*, the inappropriate emails the director had produced or generated, were records of a judicial agency because they were produced or generated by personnel of a judicial agency. Moreover, the records requested in *Lackawanna County* implicated separation of powers concerns because those records directly related to, and had an impact on, "the judiciary's . . . **ability to supervise its own personnel without interference from another branch of government**" because those emails concerned the director's suspension from a judicial employee position. *Id*. at 814 (emphasis added). Ultimately, the decision in *Lackawanna County* was most concerned with records that were judicial in nature as they were the emails from a judicial employee and associated with the judicial agency's ability to supervise its own employee.

However, a record need not be generated by an agency or its personnel for it to qualify as a record "of" the agency. *Bagwell*, 76 A.3d at 90. The records at issue

34

in *Grine* were not produced or generated by the judicial agency, but were nonetheless records of that agency because they reflected the activities of a judicial agency's "employees," there, judges. That they also reflected Centre County's payment for cell phone services for the judges did not remove the records from being "of" the judicial agency. *Grine*, 138 A.3d at 97.

Here, whether the record at issue qualifies as "of" Prothonotary depends on whether it "documents a transaction of" or activities of Prothonotary. *Id*. at 94. Considering the subject matter of the requested record, as we must, *id*. at 95, it contains the following regarding each Prothonotary employee: a department number, first and last name, hiring date (redacted), termination date (redacted), hourly pay, annual pay, and each employee's title (R.R. at 176a). This information was compiled by and is in the possession and control of County. At issue is solely the hiring and termination dates of employees of Prothonotary, a judicial agency.

Court prothonotaries and their employees are personnel of the UJS, and, thus, are considered employees of a judicial agency. A prothonotary's work and activities support the work and activities of the court and are considered functions of the court system. Part of these activities is the appointment and removal of the prothonotary office's staff, 42 Pa.C.S. § 2735, and a prothonotary's supervision of that staff. Judicial Records Manager noted the employees of Prothonotary are under the **joint** supervision of Prothonotary and County Commissioners. (R.R. at 52a.) Accordingly, those records document Prothonotary's activity of hiring or removing Prothonotary employees, who perform duties in support of the judiciary, and, therefore, "**evidence [a] duty and power of**" Prothonotary "while acting as a judicial agency," *Stover*, 176 A.3d at 1030 (emphasis added). Ultimately, the records at issue are about judicial employees, and their hiring and subsequent

35

termination by Prothonotary, who is likewise judicial personnel, and are records "document[ing] activities of judicial personnel." *Grine*, 138 A.3d at 100; *Stover*, 176 A.3d at 1030. Because these records are records "of" Prothonotary, rather than "of" County, common pleas did not err in concluding that the OOR lacked jurisdiction over the requested records because they are records of a judicial agency. *Lackawanna County*, 2 A.3d at 813-14.[18]

*D. Whether common pleas erred in the January Decision by directing the transfer of the Request to Judicial Records Manager and President Judge erred in affirming the redaction of the length of service information*

### 1. Parties' Arguments

Requester argues common pleas erred in directing that the Request be referred to Judicial Records Manager for review under Rule 509 in the January Decision because the records are not of the judiciary. (Requester's Br. at 24.) The redacted length of service information is public, Requester maintains, and President Judge

---

[18] The dissent "do[es] not dispute that Prothonotary is a 'judicial agency.'" *Scolforo v. County of York*, __ A.3d __, __ (Pa. Cmwlth., Nos. 359, 360 C.D. 2021, filed June 30, 2023), slip op. at 3 (McCullough, J., dissenting). Rather, the dissent would hold that the requested records are not "of" the judiciary because they "were not created by the judiciary in the course of its functions, [] they do not evidence any 'transaction' or 'activity' of the judiciary," "are generated, housed, and modified as necessary by [] County, not Prothonotary acting as a judicial office[,]" and the "employees' salaries and benefits are paid entirely by [] County." *Scolforo*, __ A.3d at __, slip op. at 3-5 (McCullough, J., dissenting). For these reasons, the dissent concludes the requested records are distinct from the records at issue in *Lackawanna County* and *Grine* and should not be considered records "of" the judiciary. *Id*. Under our precedent, however, a record does not have to be "created" by or in the possession of an agency for it to qualify as a record "of" that agency. *Grine*, 138 A.3d at 95; *Bagwell*, 76 A.3d at 90. In asserting the length of service record of a Prothonotary employee does not "evidence any 'transaction' or 'activity' of the judiciary," or Prothonotary acting as a "judicial office," *Scolforo*, __ A.3d at __, slip op. at 4 (McCullough, J., dissenting), the dissent does not acknowledge that one such "activity" of a prothonotary under the Judicial Code is to appoint and terminate the employees that perform the work that supports the work and activities of the court and which are considered functions of the court system. 42 Pa.C.S. § 2735(a). Thus, these are not reasons to find that a record is not "of" Prothonotary, a judicial agency.

erred in finding they are not financial records under Section 304 of the RTKL. Requester argues that, under the Supreme Court's decisions in *Pennsylvania State University v. State Employees' Retirement Board*, 935 A.2d 530 (Pa. 2007) (*Penn State*), and, more recently, in *City of Harrisburg*, 219 A.3d 602, the definition of financial records should be broadly interpreted to include records that bear a close connection to a financial record. Requester also asserts the Request should be reviewed under Rule 509, if the responsive records are not disclosable under the RTKL.[19]

County responds there was no error in President Judge's finding Section 708(b)(6)(ii) inapplicable because that section does not apply to a request for financial records from a judicial agency. It further asserts President Judge correctly determined that the length of service information was not a financial record under Sections 102 and 304 of the RTKL. (County's Br. at 18.) County argues it cannot be directed to release records it retains for the judiciary until after a request is properly considered under Section 304 and Rule 509. (*Id.* at 19.)

### 2. Analysis

We begin with Requester's claim that common pleas erred in having this matter referred to Judicial Records Manager. We are not persuaded this argument supports reversal. Having concluded the responsive records were "of" a judicial agency over which the OOR has no jurisdiction, common pleas took steps to have the Request considered by the person charged with reviewing requests for judicial records, Judicial Records Manager, by having County refer the Request to Judicial Records Manager for consideration. We discern no error in common pleas' attempt

---

[19] These last two arguments were made at oral argument.

to have the Request reviewed and resolved without requiring the filing of another request.

We next turn to Requester's assertion the responsive records are disclosable under the RTKL and/or Rule 509. Because the responsive records are "of" a judicial agency, they are only disclosable if they are financial records as both Section 304 of the RTKL and Rule 509(a) limit disclosure to those types of records. The RTKL provides that judicial agencies "shall provide financial records in accordance with the [RTKL] or any rule . . . of court providing equal or greater access to the records." 65 P.S. § 67.304(a). Section 304 invokes not only the terms of the RTKL, but also any rule of court that provides equal or greater access to the financial records of judicial agencies. One such court rule is Rule 509(a), which states: "Financial records of the [UJS] are presumed to be open to any member of the public . . . ." Pa.R.J.A. 509(a). Section 102 of the RTKL and Rule 509(a) define financial records similarly. *Compare* 65 P.S. § 67.102, *with* Pa.R.J.A. 509(a).[20] At issue is whether

---

[20] The RTKL defines "financial record," in relevant part, as follows:

(1) Any account, voucher or contract dealing with:

    (i) the receipt or disbursement of funds by an agency; or

    (ii) an agency's acquisition, use or disposal of services, supplies, materials, equipment or property.

(2) The salary or other payments or expenses paid to an officer or employee of an agency, including the name and title of the officer or employee.

65 P.S. § 67.102. Rule 509(a) defines "financial records"

as any account, contract, invoice or equivalent dealing with: 1) the receipt or disbursement of funds appropriated to the system; or 2) acquisition, use or disposal

**(Footnote continued on next page…)**

the employees' length of service, which were contained in the spreadsheet but were redacted, must be disclosed as a financial record.

"Length of service" is not included on the face of the definitions of financial records in either Section 102 of the RTKL or Rule 509(a). However, our Supreme Court has consistently interpreted the phrase "any account, voucher or contract dealing with . . . the disbursement of funds by an agency," found in the RTKL's definition of financial record, 65 P.S. § 67.102, and the definition of public record under Section 1 of the prior Right-to-Know Act[21] (RTKA) broadly to "encompass[] not merely accounts, vouchers and contracts but also **records bearing a sufficiently close connection** to such 'fiscally related' categories, **so long as they also 'deal with the receipt or disbursement of funds by an agency**.'" *City of Harrisburg*, 219 A.3d at 612 (quoting *LaValle v. Off. of Gen. Counsel*, 769 A.2d 449, 456 (Pa. 2001); *N. Hills News Rec. v. Town of McCandless*, 722 A.2d 1037, 1039 (Pa. 1999)) (emphasis added); *see also Penn State*, 935 A.2d at 534 ("[T]he RTKA reaches materials that are not facially accounts, vouchers, or contracts, but nonetheless bear some close connection with one or more of these statutory categories."). This category of records "was meant to encompass 'some range of records beyond those which on their face constitute actual accounts, vouchers or contracts.'" *City of Harrisburg*, 219 A.3d at 613 (quoting *N. Hills News Rec.*, 722 A.2d at 1039). "[F]or a record to **deal with** the disbursement of funds by an agency it need not directly 'show' a disbursement by the agency." *Id.* at 615 (emphasis in original). Requiring

---

of services, supplies, materials, equipment or property secured through funds appropriated to the system.

Pa.R.J.A. 509(a).

[21] Act of June 21, 1975, P.L. 399, *as amended*, *formerly* 65 P.S. § 66.1, repealed by the Act of February 14, 2008, P.L. 6.

a "close connection" between the record requested and one of the statutory categories is consistent with the General Assembly's intent that the RTKL and earlier "RTKA [] be liberally construed 'to fully implement the policy of disclosure[.]'" *Id.* at 614 (quoting *LaValle*, 769 A.2d at 456).

The Supreme Court has applied these principles to conclude a spreadsheet listing information about donors to a legal defense fund was a financial record under the RTKL because it bore a **close connection to an account** as it "reflect[ed] a list of monetary receipts . . . to the City [of Harrisburg]" which were deposited into the legal defense fund's bank account. *City of Harrisburg*, 219 A.3d at 616. It likewise found documents submitted to the Department of Public Welfare (DPW)[22] containing rates paid by private health plan contractors to dental subcontractors as part of implementing a Medicaid program were financial records under the RTKL because they "plainly '**deal[t] with'** with **DPW's disbursement** of billions of dollars of public monies . . . as well as [DPW's] acquisition of services to meet its obligations under federal and state law." *Dep't of Pub. Welfare v. Eiseman*, 125 A.3d 19, 30 (Pa. 2015) (emphasis added). And, most relevant to this matter, the Supreme Court concluded information about the salaries and **service histories** of Penn State employees constituted public records of the State Employees Retirement System under the RTKA. The Supreme Court reasoned the information was "used to establish [the employees'] contractual rights [(to their defined benefits)], and is detailed and evidenced in the form of records which would otherwise fit the definition of 'account, voucher or contract **dealing with the receipt or disbursement of funds by an agency**.'" *Penn State*, 935 A.2d at 535 (emphasis added). Although *Penn State* involved the RTKA, its rationale is applicable to the

---

[22] DPW is now known as the Department of Human Services.

RTKL because the General Assembly used the same language in the definition of financial record in the RTKL as it used in defining a public record under the RTKA, and "[w]e presume . . . that the General Assembly intended this same language in the RTKL . . . to have the same meaning we gave it under the RTKA." *City of Harrisburg*, 219 A.3d at 612.

While an employee's length of service does not directly show the disbursement of funds, this is not required for the record to be considered as dealing with the disbursement of funds by an agency. *Id.* at 614. Similar to how the Penn State employees' length of service records dealt with the disbursement of public monies in the nature of retirement benefits to which they had a contractual right, the length of service of Prothonotary employees deals with the disbursement of public monies in the nature of the compensation which they have a right to receive as employees. The compensation for prothonotary employees is fixed by either the prothonotary or by a county board with the prothonotary as a member. 42 Pa.C.S. § 2735(c). The connection between the length of service records and the "fiscally related" categories of the definition of financial record is sufficiently close to include them in the "'range of records beyond those which on their face constitute actual accounts, vouchers or contracts.'" *City of Harrisburg*, 219 A.3d. at 613 (quoting *N. Hills News Rec.*, 722 A.2d at 1039). Including length of service information in the RTKL definition of financial record based upon its close connection to the statutory classifications and its dealing with the disbursement of public monies is consistent with the General Assembly's intent that the RTKL is to be liberally construed so as "'to fully implement the policy of disclosure.'" *Id.* at 614 (quoting *LaValle*, 769 A.2d at 456). Accordingly, we conclude the length of service

information of a judicial agency's employee is a financial record disclosable under Section 304 of the RTKL.

Requester also contends Section 708(b)(6)(ii) of the RTKL[23] clearly establishes length of service information is public and disclosable. President Judge rejected this contention reasoning this provision did not apply to a judicial agency, and County maintains this question must be resolved under Rule 509's definition. However, we need not reach these issues based on our conclusion that records of Prothonotary's employees' length of service fall within the RTKL's definition of financial record as broadly interpreted by our Supreme Court. As they are financial records as defined by the RTKL, they are disclosable pursuant to Section 304 of the RTKL, and President Judge erred in affirming their redaction. Accordingly, the March Decision upholding that redaction is reversed.[24]

## III. CONCLUSION

Because we discern no error in common pleas' determination that Prothonotary is a judicial agency and the requested records are records of

---

[23] This section states: "Nothing in this paragraph [(relating to the exemption of certain personal identification information from disclosure)] shall preclude the release of the . . . length of service of a public official or an agency employee." 65 P.S. § 67.708(b)(6)(ii).

[24] The dissent states there is no separation of powers issue here if the requested records are considered "of" County because common pleas "has no supervisory authority over Prothonotary employees other than as they are working in court and performing court functions" and Judicial Records Manager had "no authority over Prothonotary or its employees." *Scolforo*, __ A.3d at __, slip op. at 6 (McCullough, J., dissenting). However, common pleas itself disagreed with Judicial Records Manager's view, relied upon by the dissent, finding "that the **wage and salary records requested are judicial records under the control and supervision of the judiciary**[,]" and the requested records were "of" the judicial agency, not County. (January Decision at 19 (emphasis added), R.R. at 158a.) Because appeals from the denial of disclosure of such records, under either the RTKL or Rule 509, are decided by the judiciary, not the OOR, the separation of powers doctrine is not implicated.

Prothonotary, it did not err in affirming the OOR's Final Determination in the January Decision. However, President Judge erred in upholding Judicial Records Manager's partial denial and resulting redaction of the length of service information because it bears a sufficiently close connection to the statutory categories and deals with the disbursement of an agency's funds to constitute a disclosable financial record pursuant to *City of Harrisburg*. Accordingly, we affirm the January Decision, but we reverse the March Decision.

_____

**RENÉE COHN JUBELIRER,** President Judge

Judge Fizzano Cannon and Judge Wallace did not participate in the decision in this case.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Liz Evans Scolforo and       :
The York Dispatch,       :
           Appellants       :
      :
      v.       :     No. 359 C.D. 2021
      :
The County of York       :
      :


Liz Evans Scolforo,       :
      :
           Appellant       :
      :
      v.       :     No. 360 C.D. 2021
      :
The County of York       :
      :

# O R D E R

NOW, July 10, 2023, in accordance with the foregoing opinion, the January 25, 2021 Order of the Court of Common Pleas of York County is **AFFIRMED**, and the March 17, 2021 Order of the President Judge of the Court of Common Pleas of York County is **REVERSED**.

 

 

_____
**RENÉE COHN JUBELIRER,** President Judge

Liz Evans Scolforo and
The York Dispatch,
              Appellants

      v.

The County of York

Liz Evans Scolforo,
              Appellant

      v.

The County of York

:
:
:
:
:   No.  359 C.D. 2021
:
:
:
:
:
:
:
:
:   No.  360 C.D. 2021
:
:   Argued:  September 12, 2022


BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

DISSENTING OPINION BY
JUDGE McCULLOUGH               FILED: July 10, 2023


      In resolving these consolidated Right-to-Know Law (RTKL)[1] appeals, the Majority concludes that the records at issue—name, salary, job title, and length-of-service records of York County Prothonotary (Prothonotary) employees—are the records "of" a judicial agency and, therefore, may not be disclosed to the public without the approval of the judicial records manager of the Court of Common Pleas of York County, Pennsylvania (common pleas).[2]  Although I agree with the Majority that these records are disclosable as public records, I cannot agree with the Majority's characterization of these records as those "of" a judicial agency.  Rather,

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

[2] The judicial records manager of a judicial district is designated by the president judge of that judicial district.  *See* Pa. R.J.A. 509(c)(1).  In York County, and as is common, the judicial records manager is the district court administrator (DCA).  (Reproduced Record (R.R.) 165a-67a.)

these records very plainly are financial records of York County (County), a local agency, and therefore are disclosable under the RTKL. *See* Section 708(b)(6)(ii) of the RTKL, 65 P.S. § 67.708(b)(6)(ii). The tangled procedural history below highlights in bold relief the difficulty that local records officials have in applying our precedents to RTKL requests that potentially involve both local and judicial agencies. Because I believe that the Majority confuses the analytical framework applicable to these kinds of records requests and unnecessarily complicates and restricts public access to public records, I must respectfully dissent.

First, on a procedural note, Case No. 359 C.D. 2021 is an appeal from the decision of common pleas affirming the Office of Open Records' (OOR) Final Determination. The OOR concluded that it did not have jurisdiction over the requested records because the records were those "of" a judicial agency. (Reproduced Record 12a.) The appeal to the OOR concerned a RTKL request submitted to the County, which undisputedly is a local agency. Thus, the precise question before the OOR was not so much whether it had *jurisdiction* to consider the appeal, but, rather, whether it had any *authority* to order the production of the requested records. We held as much in *Philadelphia District Attorney's Office v. Stover*, 176 A.3d 1024, 1026-27 (Pa. Cmwlth. 2017) (because district attorney's office is a local agency under the RTKL, appeal from denial of RTKL request directed to that office properly was before the OOR, which has "jurisdiction" over RTKL appeals from local agencies; "the fact that the OOR has jurisdiction to decide this controversy does not determine whether the OOR has the legal authority to grant [the r]equester's request, for the issues are separate and distinct"). I reiterate this distinction here only to make procedurally clear the fact that the OOR has "jurisdiction" over appeals from local agency RTKL determinations. The OOR may thereafter determine that the records at issue are "of" a judicial agency and, therefore, outside of its authority to either direct or preclude disclosure. This is a fine and somewhat pedantic point, but an important one, nevertheless.

PAM-2

Second, and more importantly, although I do not dispute that Prothonotary is a "judicial agency" under the RTKL and our case law, I do not believe that the requested records (personnel information regarding Prothonotary employees) are records "of" a judicial agency. As the Majority acknowledges, the fact that the requested records relate to employees of a judicial agency does not itself convert them into records "of" a judicial agency. *See Scolforo v. The County of York* ___ A.3d ___ (Pa. Cmwlth., Nos. 359 & 360 C.D. 2021, filed July __, 2023), slip op. at 24 (MO). Rather, whether these are records "of" a judicial agency is a question determined by the subject matter and character of the records. They must "document" (or prove, support, or evidence) a transaction or activity of the agency. *Stover*, 176 A.3d at 1028 (citing and quoting *Grine v. County of Centre*, 138 A.3d 88, 94-95 (Pa. Cmwlth. 2016) (*en banc*)). *See also* ___ A.3d at ___, MO at 26 ("In making this determination, courts examine whether the record is produced by the agency, reflects an activity or operation of the agency, or documents the transactions of the agency.").

I do not believe that these records qualify as records "of" a judicial agency under the above standards. The personnel records at issue in these appeals are generated, housed, and modified as necessary by the County, not Prothonotary acting as a judicial office. These employees' salaries and benefits are paid entirely by the County and not by funds appropriated to the Unified Judicial System (UJS). *See* Pa. R.J.A. 509 (defining "financial records" as those that relate to funds "appropriated to the [UJS]"). The records were not created by the judiciary in the course of its functions, and they do not evidence any "transaction" or "activity" of the judiciary. They are, therefore, both categorically and practically distinct from the records at issue in both *Court of Common Pleas of Lackawanna County v. Pennsylvania Office of Open Records*, 2 A.3d 810 (Pa. Cmwlth. 2010), and *Grine*.

In *Lackawanna County*, a RTKL request sought records of e-mails sent to or from e-mail accounts used by the county's domestic relations office director

(DRO director). *Id.* at 812. We concluded that the requested records were records "of" a judicial agency because they were produced by the DRO director, who was an administrative staff person of the UJS directly supervised by the court of common pleas. *Id.* at 813. Thus, "*his* records [were] records of a judicial agency . . . ," and Lackawanna County's payment of his salary, ownership of the subject e-mail accounts, and possession of the requested records did not convert the requested e-mails into county records. *Id.* We further noted that any attempt by the OOR to direct production of the DRO director's e-mails was a "blatant and unconstitutional" separation of powers violation:

> Among the judiciary's powers is the ability to supervise its own personnel without interference from another branch of government. An inescapable corollary to this power is that no administrative agency may exercise control over the records generated by personnel of a judicial agency.

*Id.* at 814 (citations omitted). For reasons that are obvious, that is not this case. The requested Prothonotary employee records are generated by the County and maintained by it for its own financial and employment-related purposes. Nothing in the record indicates that Prothonotary or any of its employees produced these documents in any fashion, let alone in the course of performing a judicial activity. They simply do not evidence any transaction or activity of Prothonotary acting in its function as a judicial agency. And, as stated above, I do not believe that the records' mere "relation" to Prothonotary, whatever that might mean, is sufficient to convert them into records of the judiciary.

*Grine* also is easily distinguishable for the same reasons. There, the requester sought cellular telephone records of a common pleas judge, a magisterial district judge, and a district attorney. Pertinent here, we concluded that the requested telephone records of the common pleas judge reflected *the activities* of the judiciary (i.e., the activities of a judicial officer—a judge), notwithstanding the fact that the

PAM-4

county paid the judge's cellular telephone bills. On that basis, and to maintain appropriate separation of powers and preserve the judiciary's supervisory control over its personnel, we concluded that the requested records were those of a judicial agency and were not disclosable by the county. *Grine*, 138 A.3d at 95, 97-98. And, although the issue is not now before us, the same analysis would apply to records generated by county probation officers, who also are supervised by the courts of common pleas and not by counties. *See Lackawanna County*, 2 A.3d at 813.

This, in my view, was the point of our conclusion in *Stover* that records of a criminal defendant's sentence and conviction were records of a judicial agency, no matter where they were housed. We stated that, "in both instances, the character and subject matter of the requested records evidence the duty and power **of the court while acting as a judicial agency**, and the orders document **activities that are solely and uniquely vested in and committed to the judicial branch of government.**" *Stover*, 176 A.3d at 1029 (emphasis added). Under that standard, Prothonotary employees' county-maintained personnel records that, by themselves, evidence no activity of Prothonotary *while acting as a judicial agency*, are not records "of" a judicial agency.

Further, unlike the situations in *Lackawanna County* and *Grine*, there is no separation of powers issue here. As common pleas noted, *see* ___ A.3d at ___, MO at 3-4, it has no supervisory authority over Prothonotary employees other than as they are working in court and performing court functions. Thus, the very real practical danger with the Majority's holding is that it potentially makes all, or almost all, financial records related to Prothonotary and its employees the financial records "of" a judicial agency. That means that any records related to Prothonotary's functioning or financial matters could not be released under the RTKL without the approval of the district court administrator, who has no authority over Prothonotary or its employees. This potentially would include budgeting, salaries, raises, bonuses, and the like. I do not believe that is an appropriate result. To further illustrate and

PAM-5

press the point, contrast the employee records requested here with financial records *maintained and generated by Prothonotary* that evidence the payment of costs, fees, and judgments, costs associated with service of legal filings, and records of paid-into-court funds such as a divorce master's fee. Those records, clearly, are financial records of the judiciary because they document a transaction or activity of a judicial agency *acting as a judicial agency*.

Finally, as I noted above, the requested records at issue here likely *would not* qualify as "financial records" under Pennsylvania Rule of Judicial Administration 509, which defines "financial records" of the UJS as those that relate to funds that are appropriated to the UJS. These Prothonotary personnel records relate to county-funded employment. The Majority declines to address this issue, *see* ___ A.3d at ___, MO at 42, but I think it is telling that our own Judicial Administration rules do not consider these records to be "financial records" of the UJS even though Prothonotary employees might be considered personnel of the UJS.

In sum, I would conclude that the requested records are disclosable under the RTKL as financial records of the County, a local agency. Under section 708(b)(6)(ii) of the RTKL, 65 P.S. § 67.708(b)(6)(ii), length-of-service records expressly are disclosable. This, to my mind and under our case law, is a cleaner outcome disposing of both appeals in a fashion that is readily applicable in future RTKL cases involving records that potentially "relate" to more than one kind of agency.

_____
PATRICIA A. McCULLOUGH, Judge

PAM-6